IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DECKERS OUTDOOR CORPORATION,

Plaintiff,

v.

ASOOFINE, ATHMILE, B&XY, BERANMEY SHOES, BERANMEY, CHENZZI, DILI-STORE, DONGXIHUI, GDAZZIO OFFICIAL, HOME BETTER, JENNY'SHOP, JINDASHANGMAO, JINGMINGTUO, KAITAN LIU, LANGGU, LITFUN, PATAYIA-DIRECT, QICE, ROAD CAN FIND, SIHUAI, SUXUEYINGSUXUEYING, UNIMAGLIF, VEERMO, VOLLENLACHEN, XAIODRAGONSKY, XI YAO-US TRADING LTD., XIAOXIAO88, YPNSWP, YUE YI-US TRADING LTD., HUA LONG SHENG&LTD..

Defendants.

Case No. 25-cv-10080

Judge Manish S. Shah

Magistrate Judge David Weisman

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT, DISMISS WITH PREJUDICE, AND FOR SANCTIONS OR IN THE ALTERNATIVE FOR LEAVE TO ANSWER OR OTHERWISE PLEAD**

## TABLE OF CONTENTS

BACKGROUND – THE ASOOFINE SCHEME........2

BACKGROUND –JUDGE-SHOPPING IN A RELATED CASE........4

THE *AKEANH6X696JN* SCHEME........4

DECKERS' BROADER JUDGE-SHOPPING SCHEME........5

ARGUMENT........7

I. Litfun has "Good Cause" for Setting Aside the Default Judgment........8

A. Litfun Took Quick Action to Vacate the Default........9

B. Litfun Acted in Good Faith........9

C. Decker's Would not Be Unfairly Prejudiced By Granting This Motion........9

D. Litfun Has Numerous Meritorious Defenses........10

1. This Court Lacks Jurisdiction over Litfun........11

a. The Hague Service Convention Applies and Is Mandatory........11

b. China Has Objected to Alternative Service Channels, Including Email Service........12

2. Rule 41 Bars Deckers' Claims........14

3. Deckers Lacks Trade Dress Rights in the Claimed TASMAN Trade Dress........17

a. Deckers' Claimed Trade Dress Is Generic and Unprotectable........18

b. Deckers' Claimed Trade Dress in the TASMAN Slipper Has not Attained Secondary Meaning........19

c. Deckers' Claimed Trade Dress Is Functional and Therefore Unprotectable........22

II. The Judgment Against Litfun Should Be Vacated Because Deckers Obtained it Through Litigation Misconduct........23

A. Judge Shopping is Bad........23

B. Pinching is Judge Shopping........24

C. Decker's Egregious Litigation Misconduct Warrants Vacatur and Sanctions........25

1. Default Judgment Should be Vacated Because of Deckers' Litigation Misconduct........25

2. Courts Have Authority to Levy Sanctions under § 1927 and the Court's Inherent Authority. 26

3. There are A Range of Sanctions Appropriate for Plaintiffs Who Engage In Judge Shopping. 27

4. Sanctions Are Necessary to Compensate for the Harm it has Caused and to Deter Deckers from Engaging in Judge Shopping in the Future. 27

5. Deckers Has Engaged in Judge Shopping Here and Has Used Judge-Shopping Schemes Pervasively in this District – Securing Tens of Millions of Dollars in Judgments from Defendants Whose Cases Should Have been Dismissed with Prejudice Had Deckers Not Concealed its Pinching Scheme. 28

6. Monetary Sanctions. 29

7. The Court Should Also Impose Non-Monetary Sanctions for Deckers' Brazen Judge Shopping Schemes. 30

III. Alternative Relief 30

CONCLUSION 30

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Acosta v. DT & C Glob. Mgmt., LLC,*
874 F.3d 557 (7th Cir. 2017) .......... 10

*Berthhold Types Ltd. V. Adobe Sys.,*
242 F. 3d 772 (2001) .......... 16

Bieganek v. Taylor,
801 F.2d 879 (7th Cir. 1986) .......... 9

*Blue Sphere, Inc. v. Schedule A,*
No. 1:22-cv-05599 (N.D. Ill. Jan. 31, 2023) .......... 1

*Bose Corp. v. Schedule A Defendants,*
No. 19-cv-7467, 2019 WL 6210939 (N.D. Ill. Nov. 21, 2019) .......... 1, 23

*C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,*
726 F.2d 1202 (7th Cir. 1984) .......... 17

*Central Laborers' Pension v. W.C. Beiser Concrete Co.,*
No. 10-cv-611-JPG-PMF, 2011 U.S. Dist. LEXIS 43795 (S.D. Ill. Apr. 21, 2011) .......... 9

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .......... 26

*Clark v. Tarrant Cnty.,*
798 F.2d 736 (5th Cir. 1986) .......... 14

C*ook v. Starling,*
104 F.R.D. 468 (D.C. Ill. 1985) .......... 14

*Cracco v. Vitran Exp.,*
559 F.3d 625 (7th Cir. 2009) .......... 8, 17

*Deckers Outdoor Corp. v. AKEANH6X696JN,*
No. 25-14717 (Jenkins, J.) .......... 15

*Deckers Outdoor Corp. v. AKEANH6X696JN,*
No. 25-cv-15122 (Daniel, J.) .......... 15

*Deckers Outdoor Corp. v. AKEANH6X696JN,*
No. 25-cv-15159 (Cummings, J.) .......... 15

*Deckers Outdoor Corp. v. AKEANH6X696JN,*
No. 25-cv-15234 (Jenkins, J.) .......... 15

*Deckers Outdoor Corp. v. AKEANH6X696JN,*
No. 26-cv-14963 (Seeger, J.) .......... 15

*Deckers Outdoor Corp. v. Assofine,*
No. 25-cv-9859 (Hunt, J.) .......... 15

*Deckers Outdoor Corp. v. It's Friday, Inc.,*
No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211 (S.D.N.Y. Oct. 31, 2024),

*report and recommendation adopted*, No. 20-CV-10602 (VSB) (BCM), 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025) .......... 22

*Deckers Outdoor Corp. v. Last Brand, Inc.* No. 23-cv-04850, 2025 U.S. Dist. Lexis 195922 (N.D. Cal. Oct. 2, 2025) .......... 2, 18, 19

*Deckers v. AKEANH6X696JN et al.*, No. 25-cv-14717 (Jenkins, J.) .......... 4

*Deckers v. AKEANH6X696JN et al.*, No. 25-cv-14963 (Seeger, J.) .......... 4

*Deckers v. Asoofine et al.*, No. 25-cv-9859 (Hunt, J.) .......... 3

*Delgado v. I.C. System*, No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367 (N.D. Ill. Sep. 3, 2020) .......... 10

*Doe v. Schedule A Defendants*, No. 20-cv-4099 (N.D. Ill. July 14, 2020) .......... 23

*Dongguan Deego Trading Co. v. Junyao-US*, No. 25 C 4962, 2025 WL 2174325 (N.D. Ill. Jul. 31, 2025) .......... 25, 26, 27

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47 (S.D.N.Y. 2021) .......... 20

*Eldon Industries v. Rubbermaid, Inc.*, 735 F. Supp. 786 (N.D. Ill. 1990) .......... 20

*Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018) .......... 26

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) .......... 26

*HiSpec Wheel & Tire v. Tredit Tire & Wheel*, 2007 U.S. Dist. LEXIS 1870 (N.D. Ind. Jan. 8, 2007) .......... 20

*In re Bellsouth,* 334 F.3d 941 (11th Cir. 2003) .......... 24

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) .......... 11

*Inwood Labs. v. Ives Labs.*, 456 U.S. 844 (1982) .......... 22

*Kangol LLC v. Hangzhou Chuanyue Silk Import*, No. 25-2205 (7th Cir.) .......... 13

*Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485 (7th Cir. 1989) .......... 27

*Kotsilieris v. Chalmers*, 966 F.2d 1181 (7th Cir. 1992) .......... 26

*Lavela v. Gilbert*,
No. 24-2582, 2025 U.S. App. LEXIS 5768 (7th Cir. Mar. 12, 2025) ....................................14, 16

*Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns*,
391 F. Supp. 3d 816 (N.D. Ill. 2019) ..........................................................................................13

*M OU v. Schedule A Defendants*,
No. 25-cv-13203 (Nov. 25, 2025) ...............................................................................................27

*Madu, Edozie & Madu v. SocketWorks Ltd. Nigeria*,
265 F.R.D. 106 (S.D.N.Y. 2010).................................................................................................13

*Marshall Amplification v. Xingrunshangmao*,
No. 25-cv-13829 (Blakey, J.)........................................................................................ 25, 28, 29

*Meinders, D.C. v. United Healthcare Servs.*,
No. 20-cv-2832, 2021 WL 3234918 (7th Cir. Jul. 30, 2021) .......................................................16

*Milwaukee Electric Tool Corp. v. Individuals, Corps., Ltd. Liability Cos., P'ships, & Unincorporated Associations Identified on Schedule "A"*,
No. 24 C 12487, 2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025) .................................17

*National Presto Industries v. United States Merchants Financial Group*,
No. 18-cv-03321 (SRN/BRT), 2021 U.S. Dist. LEXIS 114054 (D. Minn. June 18, 2021) ........20

*Noco Co. v. Chang*,
No. 1:20-cv-2437, 2021 WL 1192212 (N.D. Ohio Mar. 30, 2021) .............................................13

*Oxbow Energy v. Koch Indus.*,
686 F. Supp. 278 (D. Kan. 1988) ................................................................................................24

*Paragon Sales & Services v. Onyx Arms International*,
No. 93 C 4039, 1997 U.S. Dist. LEXIS 2315 (N.D. Ill. Feb. 25, 1997) ......................................14

*Pedrina v. Chun*,
987 F.2d 608 (9th Cir. 1993) .......................................................................................................16

*Philos Techs. v. Philos & D*,
645 F.3d 851 (7th Cir. 2011) .......................................................................................................11

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*,
507 U.S. 380 (1993) .......................................................................................................................8

*Pretzel & Stouffer v. Imperial Adjusters*,
28 F.3d 42 (7th Cir. 1994) ...........................................................................................................18

*Qualitex Co. v. Jacobson Prods. Co.*,
514 U.S. 159 (1995) .....................................................................................................................22

*Roulo v. Russ Berrie & Co.*,
1986 U.S. Dist. LEXIS 26859 (N.D. Ill. April 14, 1986),
*aff'd*, 886 F.2d 931 (7th Cir. 1989) ...............................................................................................19

*Sanders v. Melvin*,
25 F.4th 475 (7th Cir. 2022) .........................................................................................................27

*Sims v. EGA Products*,
475 F.3d 865 (7th Cir. 2007) ....................................................................................10

*Smart Study v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. Dec. 18, 2025) ........................................................................12, 13

*Standing Comm. On Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ......................................................................................24

*Stiebritz v. Schedule A*,
No. 1:25-cv-03459 (N.D. Ill. Apr. 9, 2025)................................................................25

*Sullivan v. Gen. Plumbing*,
No. 06 C 2464, 2007 WL 1030236 (N.D. Ill. Mar. 31, 2007) .......................................9

*Taylor v Brown*,
787 F.3d 851 (7th Cir. 2015) ...................................................................................16, 17

Textile Banking Co. v. Rentschler,
657 F.2d 844 (7th Cir. 1981) ..........................................................................................9

*Tone Brothers v. Sysco*,
28 F.3d 1192 (Fed. Cir. 1994) .....................................................................................20

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398 (N.D. Ill. Dec. 20, 2019)...............19

*TrafFix Devices, v. Marketing Displays*,
532 U.S. 23 (2001) ...................................................................................................22, 23

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992) ...................................................................................................18, 19

*U.S. Bank National Ass'n v. Dunn*,
No. 12 CV 1963, 2013 U.S. Dist. LEXIS 40881 (N.D. Ill. Mar. 25, 2013)...................9

*U.S. v. Phillips*,
59 F. Supp. 2d 1178 (D. Utah 1999) ...........................................................................24

*United States v. Conforte*,
457 F. Supp. 641(D. Nev. 1978),
aff'd, 624 F.2d 869 (9th Cir. 1980) ..............................................................................24

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) .......................................................................................................11

*Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*,
341 F. Supp. 2d 69 (D.P.R. 2004).................................................................................24

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ...................................................................................................12, 13

*Waetzig v. Halliburton Energy Services, Inc.*,
145 S. Ct. 690 (2025) ....................................................................................................14

*Wal-Mart Stores v. Samara Brothers*,
529 U.S. 205 (2000) ..............................................................................................3, 19, 20

*Walter v. Fiorenzo*,
840 F.2d 427 (7th Cir. 1988) ........ 26

*Widmar v. Sun Chemical Corp.*,
No. 11 C 1818, 2012 U.S. Dist. LEXIS 55414 (N.D. Ill. Apr. 19, 2012) ........ 14

*Xped LLC v. Entities Listed on Exhibit 1*,
690 F. Supp. 3d 831 (N.D. Ill. 2023) ........ 27

*Yong-Qian Sun v. Board of Trustees*,
473 F.3d 799 (7th Cir. 2007) ........ 17

**Statutes**

28 U.S.C. § 1927 ........ 26

Lanham Act Section 43 ........ 11, 19

**Other Authorities**

2 J. Thomas McCarthy,
MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
§ 15.30 (4th ed. 1999) ........ 20

Sarah Fackrell,
*Pinching and Pressing* ........ 24

**Rules**

Fed. R. Civ. P. 15 ........ 5, 16

Fed. R. Civ. P. 41 ........ passim

Fed. R. Civ. P. 55 ........ 7, 9

Fed. R. Civ. P. 60 ........ passim

"Let me be a hundred percent clear on this. Clients have some latitude at picking a forum. Clients have no latitude picking a judge. Judge shopping ain't a thing here or anywhere else."

- Hearing Transcript at 6-7, *Blue Sphere, Inc. v. Schedule A*, No. 1:22-cv-05599 (N.D. Ill. Jan. 31, 2023), ECF 35 (Judge Steven C. Seger) (Attached as Ex B).

Plaintiff Deckers, with the assistance of its counsel, Greer Burns and Cain, and its attorneys, Amy Crout Ziegler, Hannah Elizabeth Dawson, Luana Faria De Souza, Justin Gaudio (and potentially others) (hereafter collectively referred to as "Greer Burns") are engaged in a widespread scheme to manipulate this Court's random judge selection process, engaging in egregious judge shopping. Deckers' scheme, as implemented by Greer Burns, undermines the integrity of this Court, wastes judicial resources, causes confusion well beyond the baseline chaos typical of the maligned "Schedule A" case type. As Judge Durkin said in *Bose Corp. v. Schedule A Defendants,* No. 19-cv-7467, 2019 WL 6210939 at *1 (N.D. Ill. Nov. 21, 2019), the practice "must stop."

Deckers' judge-shopping scheme is one of many reasons that this Court should set aside the default judgment. The scheme provides an independent ground for vacatur but also masked other defects in Deckers' pleadings that should have also led to dismissal, not default. These issues are on top of the lack of a merits case that would ordinarily support any run-of-the-mill motion to vacate. But as more fully explained below, this case is part of a much larger judge-shopping scheme that Deckers has hatched, which makes it anything but run-of-the mill.

Defendant Litfun stands ready to defend this action on the merits. Due to confusion of responsibilities with its prior counsel and departing partners, among other things, Litfun was tardy in responding not only to the complaint but to Deckers' motion for entry of default judgement. The confusion was exacerbated by the lack of any Hague-Convention compliant service of process, and compounded by Decker's multiple re-filings and dismissals of this identical case as well as

bringing multiple suits against Litfun for allegedly infringing the exact same intellectual property as part of its widespread judge-shopping scheme related to the Tasman trade dress cases.

It is the longstanding preference in the federal courts that cases be decided on the merits, not based on default judgment. Litfun has always been ready and willing to defend itself on the merits of Deckers' claims. Indeed, as set forth below, Litfun believed that its prior counsel was in fact handling and defending against these claims. With good cause for its delay and with multiple substantial defenses on the merits, Litfun should be permitted to defend itself and asks this Court vacate the entry of default judgement to allow it to do just that.

## BACKGROUND – THE ASOOFINE SCHEME

Deckers filed its complaint on the generic Tasman trade dress in this case on August 22, 2025 (Dkt 1). It then moved for leave to serve the defendants by email and bypass the requirements of the Hague Convention on August 26, 2025 (Dkts 10-12). This Court granted Deckers leave to bypass the Hague Convention and serve defendants by email on September 2, 2025. (Dkt 9). Deckers purported to serve Litfun on September 25, 2025, by sending an email to usamazon168@sina.com, notwithstanding the fact that Litfun's Amazon store provided a physical address where it was located in China. The clerk set the date by which Litfun was to answer or otherwise plead as October 16, 2026) (Dkt 19).

Although several defendants appeared to defend, as to others, Deckers moved for entry of default judgment shortly after the Northern District of California has found the exact trade dress asserted in this case to be "generic" and thus wholly unprotectable. *Compare Deckers Outdoor Corp. v. Last Brand, Inc.* No. 23-cv-04850, 2025 U.S. Dist. Lexis 195922 at *13 (N.D. Cal. Oct. 2, 2025) (granting summary judgment against Deckers and finding that two of its claimed trade dresses – *including for the Tasman product at issue here* – were generic and unworthy of protection) *with* Compl. ¶ 17 (alleging that the Tasman trade dress is "unique and inherently

distinctive.") For "infringement" of this generic trade dress, Deckers has sought (and now obtained) a judgment for nearly $ 576,719.64 in Litfun's sales of its own competing product.[1]

When Deckers sent a copy of the complaint by email, Litfun was represented by a law firm handling various intellectual property matters for it. *See* Declaration of Liu Bilian ¶ 2 (April 2, 2026) (attached as Ex M). Litfun provided paperwork to this law firm and believed that the firm would appear on its behalf and defend this suit. *Id.* It was not until after this Court entered a default judgment that Litfun learned that the attorney who handled IP litigation matters for it had left that firm to join another. *Id.* This matter fell through the cracks. Litfun did not learn of this until it retained current counsel on an unrelated copyright matter. *Id.* ¶ 4. Upon learning of the true facts, Litfun instructed current counsel to defend and now files this motion to vacate a week after being retained. It was always and remains Litfun's intent to defend itself in this action.

There was also considerable confusion because of the multiple lawsuits that Deckers filed against Litfun based on the identical complaint and on the same asserted Tasman trade dress. The confusion is multiplied by two factors. First, Deckers sued Litfun in this case and one prior case apparently based on its Amazon.com offerings using nearly identical complaints. *See Deckers v. Asoofine et al.*, No. 25-cv-9859 (Hunt, J.) (terminated as to Litfun and all other co-defendants on August 22, 2025); *see also* Complaint in this case (Dkt 1) (Aug. 22, 2025) (filed the same day that Deckers dismissed out Litfun and all the codefendants here from the case before Judge Hunt).

---

[1] Deckers and its counsel failed to inform the Court anywhere in its complaint or any subsequent filing that its claimed trade dress had been deemed generic and unenforceable on summary judgment in another court. Product trade dresses are not "inherently distinctive." *See Wal-Mart Stores, Inc.*, 529 U.S. at 216 ("[A] product's design is distinctive . . . *only* upon a showing of secondary meaning." (emphasis added). Because Deckers' claimed trade dress is not registered, there is no reporting requirement to the USPTO to reflect that the claimed Tasman trade dress is unregistrable and unprotectable because it is generic.

## BACKGROUND –JUDGE-SHOPPING IN A RELATED CASE THE *AKEANH6X696JN* SCHEME

The second confusion-compounding factor is that this case overlaps and is intertwined with the cases that are part of the *AKEANH6X696JN* judge-shopping scheme, in which Deckers has also sued Litfun for allegedly infringing the very same Tasman trade dress as it has alleged here. Specifically, while this case was pending, and *before* Deckers moved for default judgment here (Dkts 49-50), Deckers sued Litfun two more times using identical complaints. *See Deckers v. AKEANH6X696JN et al.*, No. 25-cv-14717 (Jenkins, J.) (Compl. Dkt. 1) (Dec. 3, 2025); *id.* (Dkt 19) (Am. Compl. dropping Litfun) (Dec. 10, 2025); and *See Deckers v. AKEANH6X696JN et al.*, No. 25-cv-14963 (Seeger, J.) (Dkt. 1) (Dec. 10, 2025); *see also id.* (Dkt 10) (Am. Compl. dropping Litfun) (Dec. 11, 2025).

On the same day Deckers filed its default motion before Judge Shah (Dec. 11, 2025) and thereafter, Deckers' repeated the process in the AKEANH6X696JN Judge Shopping scheme four more times:

| Filing Date | Case No. | Trade Dress Asserted | Assigned Judge | No. of Defendants | Deckers' Action | Pinch Amendment |
|---|---|---|---|---|---|---|
| 12-3-25 | 25-cv-14717 | TASMAN | *Jenkins* | 70 | Amended to drop all but one defendant. | 12-10-25 |
| 12-10-25 | 25-cv-14963 | TASMAN | Seeger | 69 | SAME | 12-11-25 |
| 12-11-25 | Decker's filing of Motion for Default in This Case | | | | | |
| 12-12-25 | 25-cv-15122 | TASMAN | Daniel | 68 | SAME | 12-12-25 |
| 12-12-25 | 25-cv-15159 | TASMAN | Cummings | 67 | SAME | 12-15-25 |
| 12-16-25 | 25-cv-15234 | TASMAN | *Jenkins* | 66 | SAME | 12-16-25 |
| 12-16-25 | 25-cv-15281 | TASMAN | Bucklo | 66 | FINISHED SHOPPING | N/A |
| 12-16-25 | Entry of Default Judgment in This Case (Dkts 53-54) | | | | | |

By the time this Court entered the default judgment order challenged here (Dec. 16, 2025), Deckers had sued Litfun in eight different cases, assigned to seven different judges (the same case was assigned to Judge Jenkins twice), and Deckers had voluntarily dismissed Litfun six times – all

based on the same complaint for the same claims of infringing the same claimed Tasman trade dress.[2]

## DECKERS' BROADER JUDGE-SHOPPING SCHEME

It took Deckers only two tries to get this case before Judge Shah. After filing, "pinching," and dismissing a prior action assigned to Judge Hunt, Deckers decided to proceed with the same two claims against the present 30 defendants. Deckers' conduct in the related and intertwined AKEANH6X696JN Scheme illustrates the extremes to which Deckers went to get to the judge it wanted, or to avoid those it did not. It is one example of a much larger judge-shopping scheme. Specifically, Deckers is using a judge-shopping scheme referred to as "pinching."

Deploying the scheme, Deckers files a complaint against numerous defendants, attempting mass joinder. If it likes that judge, it prosecutes the case. If it does not, it uses the Rule 15 amendment-as-of-right process to "pinch" the case almost immediately down to just a single defendant from its multiple original defendants. One more step completes the scheme. A refiling of the identical case (minus the one defendant) follows shortly thereafter, now randomly assigned to a new judge, carefully marking such refiling as an "original action" on the civil cover sheet. Rinse and repeat as needed before the "right" judge presides over the bulk of the case. Ostensibly less important "pinched" parties temporarily stay as lone defendants with earlier judges – who Deckers appears to believe have reputations for scrutinizing mass joinder cases.

---

[2] The difference between the two parts of the judge-shopping scheme at least from Litfun's perspective appear to be that in the Asoofine Scheme Deckers' cited evidence of infringement shows products for sale on Amazon.com whereas in AKEANH6X696JN, Deckers' cited evidence shows the same products for sale on Walmart.com. *Compare* "Screenshot Evidence PDFS: Deckers Outdoor Corporation – 25cv10080" (available at http://gbcinternetenforcement.net/25-10080/) (last visited Apr. 2, 2026) (pdf related to Litfun attached as Ex N) ((this case); *with* "Screenshot Evidence PDFS: Deckers Outdoor Corporation – 25cv15281") (available at http://gbcinternetenforcement.net/25-15281/) (last visited Apr. 2, 2026) (pdf related to Litfun attached as Ex O). The complaints in these cases are otherwise the same.

The related and intertwined *AKEANH6X696JN*[3] cases and scheme[4] shows exactly this judge-shopping-by-pinching scheme plays out. On the two-count trade dress complaint concerning the claimed trade dress in TASMAN shearling suede slippers, Deckers' "pinching" judge-shopping scheme looks like this:

| Filing Date | Case No. | Trade Dress Asserted | Assigned Judge | No. of Defendants | Deckers' Action | Pinch Amendment |
|---|---|---|---|---|---|---|
| 12-3-25 | 25-cv-14717 | TASMAN | *Jenkins* | 70 | Amended to drop all but one defendant. | 12-10-25 |
| 12-10-25 | 25-cv-14963 | TASMAN | Seeger | 69 | SAME | 12-11-25 |
| 12-12-25 | 25-cv-15122 | TASMAN | Daniel | 68 | SAME | 12-12-25 |
| 12-12-25 | 25-cv-15159 | TASMAN | Cummings | 67 | SAME | 12-15-25 |
| 12-16-25 | 25-cv-15234 | TASMAN | *Jenkins* | 66 | SAME | 12-16-25 |
| 12-16-25 | 25-cv-15281 | TASMAN | Bucklo | 66 | FINISHED SHOPPING | N/A |

This "pinch" scheme implicates not just public matters of court-system integrity, but also private rights. By the time these "pinched" cases appeared before Judge Jenkins (the first time), the scheme gave Litfun an unassailable claim preclusion / *res judicata* defense, by operation of Rule 41 and its prohibition against third (and further) filings after two voluntary dismissals.[5] This is supported, with case law, in detail below.

Deckers also took steps to disguise its scheme. Deckers dismissed the lone defendant in each of the "pinched" cases shortly after amending, so that by the time the clerk or any judge examined the civil cover sheet for "related cases," those cases were no longer pending. If there is any doubt that this scheme went largely hidden, in at least two of Deckers' schemes, the original filing was reassigned to the same judge twice before Deckers stopped judge shopping. *See CHART*

[3] AKEANH6X696JN is the name of the first defendant/brand listed in the first-filed case in that scheme.
[4] The relevance of the AKEANH6X696JN scheme is not only to show Deckers and Greer Burns' bad conduct. It is also to show, as argued further, *infra*, one of the many defenses that Litfun has on the merits – namely, *res judicata*. *See infra* Section I.B.2.
[5] Defendants named in the AKEANH6X696JN but not here would have a Rule 41 and *res judicata* basis for dismissal after the dismissal before Judge Seeger.

*OF DECKERS' JUDGE SHOPPING IN "TASMAN" CASES* (attached as Ex A) (hereafter referred to as "Deckers Judge Shopping Chart") (showing that cases in the "AKEANH6X696JN Scheme" were twice assigned to Judge Jenkins – and cases in the "Birene Scheme" were twice assigned to Judge Haranji).

Deckers stayed with its first-assigned judge in only two out of eleven filing groups. *See* Deckers Judge Shopping Chart (Ex A). Twice, Deckers changed judges six times (AKEANH6X696JN and Birene schemes) and twice it changed judges five times (the bei duo scheme, and the Clpp'Li Scheme). *Id.* Here, there was "just" one prior filing, dismissal, and refiling in this specific case. *Id.* But Litfun was caught up in the intertwined and related AKEANH6X696JN scheme involving not just two, but six different cycles of its filing, pinching, and refiling the exact same claims.

For the reasons more fully set forth below, this Court should vacate its default judgment order as to Litfun. In the alternative, it should grant Litfun leave to answer or otherwise plead in response to Deckers' complaint on or before April 17, 2026.

**ARGUMENT**

Rule 55(c) of the Federal Rules of Civil Procedures states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) in turn states that a default judgment can be vacated if a party shows "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Courts may also vacate judgments obtained by "(3) fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To have a default judgment vacated, the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up). It is a well-established policy to favor "trial on the

merits over default judgment." *Cracco v. Vitran Exp.*, 559 F.3d 625, 631 (7th Cir. 2009). Defendant Litfun satisfies each of these criteria.

## I. Litfun has "Good Cause" for Setting Aside the Default Judgment

Good cause for setting aside a default judgment can include "excusable neglect," which encompasses "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'hip*, 507 U.S. 380, 388 (1993). In Pioneer, the Supreme Court stated that the inquiry is:

> at bottom an *equitable* one, taking account of *all the relevant circumstances* surrounding the party's omission. These include . . . the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

Litfun did not intend to default and believed that its prior counsel, who had represented it in other intellectual-property matters, was handling this case. *See Bilian* Decl. ¶¶ 2-3. Confusion with respect to the departure of certain attorneys from Litfun's prior firm as well as multiple filings *and* dismissals of Litfun in numerous cases based on the same claimed trade dress compounded the issue. *Id.* Litfun had instructed prior counsel to address this and believed that it was being handled. *Id.* Indeed the multiple dismissals of Litfun on the very same claims – including Deckers filing, dismissing, and refiling against Litfun on the same day that this Court entered default judgment is good cause. As a result, Litfun's efforts to oppose the motion for entry of default and default judgment, particularly in light of Deckers' chaotic and vexatious "pinching" scheme, meet the standards for "good cause" and "excusable neglect."

*A. Litfun Took Quick Action to Vacate the Default*

This motion follows soon after Litfun discovered the oversight on the part of its prior counsel. "What is considered 'prompt action' is determined on a case-by-case basis." *Sullivan v. Gen. Plumbing,* No. 06 C 2464, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007).

Courts have found that four months was not "quick action" but have also found that four months is "quick action." *Compare, U.S. Bank National Ass'n v. Dunn,* No. 12 CV 1963, 2013 U.S. Dist. LEXIS 40881 (N.D. Ill. Mar. 25, 2013) (four months not fast enough when defendant "did nothing") and *Bieganek,* 801 F.2d at 882 (foreign defendant who, due to "mistake, inadvertence or possibly a misunderstanding that someone would purportedly handle [defaulting defendants'] interests) waiting more than four months to move to vacate was permitted to)*; with Central Laborers' Pension v. W.C. Beiser Concrete Co.,* No. 10-cv-611-JPG-PMF, 2011 U.S. Dist. LEXIS 43795, at *6 (S.D. Ill. Apr. 21, 2011) (four months quick enough when facts were confusing and unclear as to the default). Under the circumstances, Litfun's quick action after it learned of the true nature of the default in this case, satisfies Rule 55 and Rule 60.

*B. Litfun Acted in Good Faith.*

It has always been Litfun's intent to defend itself. Litfun believed that its prior counsel was, in fact, defending it in this matter. Once this was discovered to not be the case, Litfun quickly moved to defend itself, identifying numerous defenses it intends to pursue if this case goes forward. In the absence of willful disregard or intent to flout the court's orders, the cases apply the general lenient standard and preference for trial on the merits. See, e.g., Bieganek v. Taylor, 801 F.2d 879, 882 (7th Cir. 1986) (citing Textile Banking Co. v. Rentschler, 657 F.2d 844, 854 (7th Cir. 1981)).

*C. Decker's Would not Be Unfairly Prejudiced By Granting This Motion.*

Decker's would not be unfairly prejudiced here if the motion were granted. As the As the Supreme Court noted, prejudice to the plaintiff is a factor and its absence counsels toward vacatur.

*Pioneer Inv. Servs. Co.*, 507 U.S. at 397. Deckers would not be unfairly prejudiced here. Further, any prejudice as to timing in allowing Litfun to defend itself could be ameliorated in several ways. First, the case as to Litfun could be severed to proceed on its own or could be severed and transferred and consolidated with the identical pending case before Judge Bucklo, in which Litfun has until April 10, 2026, to answer or otherwise plead. But as more fully stated below, the progress of proceedings as to other defendants here should not be an issue because dismissal would be most appropriate action after vacatur. Finally, the size of the judgment viewed against the weakness of the underlying claims also counsels towards permitting *vacatur*. *See, e.g., Sims v. EGA Products,* 475 F.3d 865, 869 (7th Cir. 2007) (vacating default after five-month delay and stating "delay that imposes slight injury does not call for multi-million-dollar awards.")[6]

*D. Litfun Has Numerous Meritorious Defenses*

To satisfy the "meritorious defense" standard, a defense "does not need to be a clearly victorious argument, but it must contain more than bare legal conclusions." *Delgado v. I.C. System*, No. 17-cv-04918, 2020 U.S. Dist. LEXIS 161367 (N.D. Ill. Sep. 3, 2020) (quoting *Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 561-62 (7th Cir. 2017) (cleaned up).

Here, Litfun has several strong defenses to Deckers' claims including procedural and substantive defenses. Procedurally:

- This Court lacks personal jurisdiction over Litfun because service of process was faulty and in violation of the Hague Convention.

and even if jurisdiction were proper,

- Deckers has previously sued and voluntarily dismissed Litfun from the same Lanham Act trade dress infringement case on six separate occasions. Under Rule 41, the *second* voluntary dismissal acts as a dismissal with prejudice and Deckers' claims are barred by *res judicata*.
- Deckers procured this judgment through egregious litigation misconduct – namely as part of its judge-shopping scheme.

[6] The default judgment against Litfun was for $576,719.64. (Dkt. 54 at 4).

Substantively Deckers' claims fail for at least three reasons:

- The claimed TASMAN trade dress is generic and at least one other Court has already entered summary judgment against Deckers on exactly that issue.
- The claimed TASMAN trade dress lacks secondary meaning and therefore cannot function as a source-identifying trade dress. And,
- The claimed TASMAN trade dress is legally functional under the doctrines of utilitarian and/or aesthetic functionality and therefore are not a protectable trade dress.[7]

1. <u>This Court Lacks Jurisdiction over Litfun</u>

A judgment is void when a court lacks personal jurisdiction over the defendant at the time the judgment was entered. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). A court lacks personal jurisdiction in the absence of proper service of process. Critically, relief under Rule 60(b)(4) is not discretionary. When a judgment is void, the district court is required to grant the motion. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71 (2010); *Philos Techs. v. Philos & D*, 645 F.3d 851, 855 (7th Cir. 2011) (judgment void for lack of personal jurisdiction must be vacated under Rule 60(b)(4)).

*a. The Hague Service Convention Applies and Is Mandatory.*

The Hague Service Convention "applies in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention, Art. 1.[8] The Supreme Court has held that when the Hague Convention applies, compliance is mandatory. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694,

[7] It is also unlikely that Deckers' could ever establish a likelihood of confusion as required under Section 43(a) of the Lanham Act, but this motion focuses on only the three defenses noted above.
[8] Full text of the convention is available, among other places, here https://perma.cc/XC9X-XCVG (last visited March 31, 2025).

705 (1988). This action requires transmitting service documents to China – a contracting State – making the Convention applicable.

Both the United States and the People's Republic of China, where Litfun resides, are contracting parties to the Convention. China acceded to the Convention on July 3, 1991, with effect from May 1, 1992. Under Article 2 of the Convention, China designated the Ministry of Justice of the People's Republic of China as its Central Authority to receive and process service requests from foreign courts and parties. *See, Smart Study v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 166-67 (2d Cir. Dec. 18, 2025). Service on a Chinese corporate defendant like Litfun must therefore proceed through the Central Authority – or through another channel specifically authorized by the Convention and not objected to by China – before any default can be entered. *Id.*

*b. China Has Objected to Alternative Service Channels, Including Email Service*

Article 10 of the Convention permits certain alternative methods of service such as postal channels and direct service through judicial officers only in contracting states that do not object. *Smart Study,* 164 F. 4th at 166-67 *at* 170 (citing Declarations of the People's Republic of China, https://perma.cc/UMT5-V35D) (last visited March 31, 2026). China has expressly objected to all Article 10 alternative service methods. *See* Hague Conference on Private International Law, Status Table, Convention of 15 November 1965, Declarations/Reservations of the People's Republic of China (available at https://perma.cc/TEF5-RF9Q) (last visited March 31, 2026) As a result, no alternative service channel under Article 10 is available for defendants like Litfun, who are located in China.

Email service is not mentioned in the Convention. It is not an authorized alternative. The Second Circuit recently held that email service on a Chinese defendant does not constitute proper service under the Hague Convention and is preempted as an alternative method of service. *See*

*Smart Study*, 164 F.4th at 174. In *Smart Study*, the court emphasized that because China objected to Article 10 alternative service channels, there is no basis – regardless of convenience or practicality – to substitute email for the Convention's prescribed Central Authority procedures. *Id.* at 174. Courts in this Circuit and elsewhere have reached the same conclusion. *See, e.g.*, *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns*, 391 F. Supp. 3d 816, 820-21 (N.D. Ill. 2019)[9] (Hague Convention procedures mandatory for service on Chinese defendants);[10] *see also Noco Co. v. Chang*, No. 1:20-cv-2437, 2021 WL 1192212, at *3 (N.D. Ohio Mar. 30, 2021) (rejecting email service on Chinese defendant with known address as inconsistent with Hague Convention obligations); *Madu, Edozie & Madu v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (email service improper where Hague Convention applies).

Plaintiff's service of a company organized under the laws of the People's Republic of China, by email violated the Hague Convention and cannot constitute proper service under Rule 4. Deckers' motion relied on counsel's unsupported statement that any such address was "unlikely to be legitimate." *See* Decl. Justin Gaudio in Supp. of Motion for Email Service (Dkt 12) ¶ 2. But even if that is true (it is not) it is irrelevant. As the Second Circuit noted in *Smart Study*, "[e]ven if it is highly likely that service *via* the Hague Service Convention would be unsuccessful, compliance with the Convention is mandatory in all cases to which it applies." 164 F.4th at 172 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Because Deckers failed to comply with the requirements of the Hague Convention and made no effort to show why it

---

[9] While some courts – even in this district – have ignored the Hague Convention, the trend appears to apply the correct interpretation of international law.

[10] This issue is currently on appeal to the Seventh Circuit in *Kangol LLC v. Hangzhou Chuanyue Silk Import*, No. 25-2205 (7th Cir.). The Court heard oral argument on last month on February 25, 2026. *Id.* (Dkt. No. 29).

should be disregarded, this Court never obtained personal jurisdiction over Litfun and all actions taken against it were procedurally improper and constitutionally deficient.

2. Rule 41 Bars Deckers' Claims

Because the case against Litfun has been brought and dismissed multiple times before, Rule 41 and *res judicata* bar its claims. *See Lavela v. Gilbert,* No. 24-2582, 2025 U.S. App. LEXIS 5768, at *6 (7th Cir. Mar. 12, 2025) ("at that moment Lavela's second case ended, so any further orders by the district court were without effect"). Deckers' "pinching" scheme itself bestows this unassailable merits defense for its victims. Its prior dismissals of Litfun bar the current lawsuit.

Rule 41 of the Federal Rules of Civil Procedure states that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a [subsequent] notice of dismissal operates as an adjudication on the merits." *See* Fed. R. Civ. P. 41 (a)(1)(B). An amended complaint entirely supersedes and takes the place of an original complaint. *See, e.g., Clark v. Tarrant Cnty.*, 798 F.2d 736, 740 (5th Cir. 1986). "[D]istrict courts in Illinois have treated dropping a defendant from an amended complaint as a voluntary dismissal pursuant to Rule 41." *See Widmar v. Sun Chem. Corp.,* No. 11 C 1818, 2012 U.S. Dist. LEXIS 55414, at *9 (N.D. Ill. Apr. 19, 2012) (citing *Cook v. Starling*, 104 F.R.D. 468, 469 (D.C. Ill. 1985)); *see also Paragon Sales & Services v. Onyx Arms International*, No. 93 C 4039, 1997 U.S. Dist. LEXIS 2315, at *12 (N.D. Ill. Feb. 25, 1997) ("When a plaintiff files an amended complaint dropping claims against a defendant, the amendment operates as a voluntary dismissal of that defendant"). Voluntary dismissal, even without prejudice, acts as a final order. *See, e.g., Waetzig v. Halliburton Energy Services, Inc.,* 145 S. Ct. 690, 696-97 (2025).

Deckers sued and voluntarily dismissed Litfun from six cases on the same facts and claims – three *before* this Court entered default judgment *See*:

- *Deckers Outdoor Corp. v. Assofine,* No. 25-cv-9859 (Hunt, J.) (Complaint Dkt 1) (attached as Ex C) *and* (Amended Complaint Dkt 10 attached as Ex C) (dropping, *inter alia*, Litfun); and
- *Deckers Outdoor Corp. v. AKEANH6X696JN*, No. 25-14717 (Jenkins, J.) (Compl. Dkt 1) (attached as Ex D) *and* (Dkt 19) (amending and dropping Litfun);
- *Deckers Outdoor Corp. v. AKEANH6X696JN*, No. 26-cv-14963 (Seeger, J.) (Compl. Dkt 1) (attached as Ex E) *and* (Dkt 10) (amending and dropping Litfun);

two the same day;

- *Deckers Outdoor Corp. v. AKEANH6X696JN*, No. 25-cv-15122 (Daniel, J.) (Compl. Dkt 1) (attached as Ex F) *and* (Dkt 9) (amending and dropping Litfun);
- *Deckers Outdoor Corp. v. AKEANH6X696JN*, No. 25-cv-15159 (Cummings, J.) (Compl. Dkt 1) (attached as Ex G) *and* (Dkt 10) (amending and dropping Litfun);

and one after).

- *Deckers Outdoor Corp. v. AKEANH6X696JN*, No. 25-cv-15234 (Jenkins, J.) (Compl. Dkt 1) (attached as Ex H) *and* (Dkt 9) (amending and dropping Litfun).

Each of these complaints is a two-count complaint for supposed infringement of the claimed "TASMAN" trade dress under the Lanham Act and Illinois law. *Id.*

Deckers and its attorneys misled about these six prior complaints and amendments, which serially dropped every single defendant named in this case, amendments that acted as prior voluntary dismissals. Although Deckers marked its civil cover sheets as "related" to the previously-filed suits, it also marked them as "original" rather than reinstated, concealing the fact that identical claims had been brought and voluntarily dismissed previously. Because Litfun has been amended out of and thus voluntarily dismissed from Deckers' previous lawsuits six times, the second of those dismissals (Dkt 19 in the 25-14717 case then pending before Judge Jenkins) acted as an

adjudication on the merits. *See* Fed. R. Civ. P. 41 (a)(1)(B).[11] This prior adjudication on the merits acts as *res judicata* here, *Lavela,* 2025 U.S. App. LEXIS 5768, at *6, which is a meritorious defense supporting *vacatur.*

The Seventh Circuit's decision in *Taylor v Brown* does not compel a different result. *See* 787 F.3d 851, (7th Cir. 2015) (holding that the language of Rule 41 (a)(2) speaks in terms of dismissing an "action" and that "misjoined claims" should have be amended out under Rule 15) (citing *Berthhold Types Ltd. V. Adobe Sys.*, 242 F. 3d 772, 777 (2001). There are at least two reasons that the rule of *Taylor* and *Berthold* does not apply here.

First, courts have interpreted the language of Rule 41 to find that when all claims against a party are dropped, the "action" as to that party is a voluntary dismissal. *See. e.g., Meinders, D.C. v. United Healthcare Servs.*, No. 20-cv-2832, 2021 WL 3234918 (7th Cir. Jul. 30, 2021) (noting that when "all Meinders's claims against [a defendant] dropped out of the lawsuit" rule 41 (a)(1) would apply); *see also Pedrina v. Chun*, 987 F.2d 608, 609 (9th Cir. 1993) ("The question presented by this appeal is whether Rule 41 (a)(1) allows a plaintiff to dismiss without a court order fewer than all of the named defendants, or whether the Rule is limited to dismissals of the plaintiff's entire case ... . We agree with the First, Third, Fifth, and Eighth Circuits that Rule 41 (a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for summary judgment.").

Second, if even if "action" means the entire case as filed – including parties *and* claims – Deckers' pinching/judge-shopping scheme still meets that definition. Deckers' scheme just

[11] Dismissal of the third (before Judge Seeger); fourth (before Judge Daniel), fifth (before Judge Cummings) and sixth (also before Judge Jenkins) should have also acted as an adjudication on the merits but that may be the litigation equivalent of beating a dead horse.

implements that dismissal in two parts – the first part typically dismisses out 99%[12] of all defendants and the second part dismisses out the remaining lone defendant, without taking any affirmative prosecutorial action in the case. This inaction and quick dismissal deprives the later-filed court of any ability to transfer back to the originally-assigned judge. This is shown in the chart collecting the numerous pinching/judge-shopping schemes that Deckers has implemented just as related to cases claiming trade dress rights in the Tasman branded suede slipper. *See* Deckers Judge Shopping Chart (Ex A). Therefore, Deckers' scheme which keeps a sole defendant in an earlier-filed case only to drop it days or weeks later is still the equivalent of the voluntary dismissal of an "action" under *Taylor*.

3. <u>Deckers Lacks Trade Dress Rights in the Claimed TASMAN Trade Dress</u>

Litfun also has substantial defenses to the merits that independently warrant *vacatur*. It is the longstanding policy in this Circuit that favors "trial on the merits over default judgment." *Cracco v. Vitran Express,* 559 F.3d at 631(citing *Yong-Qian Sun v. Bd of Trustees*, 473 F.3d 799, 811 (7th Cir. 2007) *C.K.S. Eng'rs. v. White Mountain Gypsum*, 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)). In cases other than those involving void judgment, a Court should vacate a default when "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (cleaned up) *Milwaukee Electric Tool Corp. v. Individuals, Corps., Ltd. Liability Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24 C 12487, 2025 U.S. Dist. LEXIS 216016, at *5 (N.D. Ill. Nov. 3, 2025) (*citing Cracco*, 559 F.3d at 631. To demonstrate a meritorious defense for Rule 60(b) purposes, a defendant need only put

[12] Deckers here dismissed out 30 of 31 here in its first and only pinch in the scheme here. Other schemes have pinched from 75 incrementally down to 71, from 70 to 66, 67 to 60, and 57 to 53. *See* Chart of Deckers' Schemes (Ex A).

forth facts that, if proven, would constitute a cognizable defense. *Pretzel & Stouffer*, 28 F.3d at 46. Litfun satisfies this standard.

*a. Deckers' Claimed Trade Dress Is Generic and Unprotectable.*

Trade dress protection extends only to product features that identify the source of a product, not to features that consumers understand as referring to a general category of goods. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The overall appearance of the UGG TASMAN slipper which Deckers describes as embodying a trade dress describes literally hundreds of slippers for sale just in the United States.

Decker's claims it has rights to exclude others from making footwear that includes:

- An embroidered braid around the opening of the upper;
- A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;
- A raised and rounded dome shaped toe;
- A brushed suede-like exterior; and
- A thick, platform outsole.

Complaint at ¶ 17, pages 5-6 (Dkt 1).

Decker's supposed trade dress describes a broad category of footwear that has been produced by hundreds of manufacturers. These features and appearance are generic and commonly used in the suede-and-sheepskin slipper market, not distinctive indicators of any single source. The facts here – with this particular style of footwear and the plethora of competitive alternatives – are the same facts that the Northern District of California faced when it found the Tasman brand's design to be generic, unprotectable, and unenforceable because of the myriad of similar-looking alternatives, among other things. *See Deckers Outdoor v. Last Brand, Inc..,* No. 23-cv-04850-AMO, 2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025) (granting summary judgment on genericness defense). There, the court found that the claimed trade dress for Deckers' Tasman

branded suede slipper (the same trade dress that Deckers bases its entire lawsuit on here) was generic and thus unprotectable. *Id.*

Where claimed trade dress consists of elements that are generic to the product category, the trade dress is not protectable regardless of commercial success or advertising. *See, e.g., Two Pesos,* 505 U.S. at 768. Just as in *Last Brand*, evidence here — including third-party product offerings, industry practice, and consumer perception — will establish that the TASMAN design elements are generic across the suede shearling casual footwear category and cannot serve as protectable trade dress. *Last Brand, Inc..,* 2025 U.S. Dist. LEXIS 195922 at *13 (entering summary judgment against Deckers on the issue of genericness for the TASMAN design).

*b. Deckers' Claimed Trade Dress in the TASMAN Slipper Has not Attained Secondary Meaning.*

LITFUN would also prevail on its defense that the claimed TASMAN trade dress is not source identifying – *i.e.*, has not attained "secondary meaning." "[I]n an action for infringement of unregistered trade dress under 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-Mart Stores v. Samara Brothers*, 529 U.S. 205, 216 (2000). "Secondary meaning is established when a plaintiff, by use of its trade [dress] . . ., achieves in that [trade dress], a special significance to the public such that a substantial number of present or prospective customers understand [the trade dress] as referring to the person who holds the mark." *Roulo v. Russ Berrie & Co.*, 1986 U.S. Dist. LEXIS 26859 (N.D. Ill. April 14, 1986), *aff'd*, 886 F.2d 931 (7th Cir. 1989).

It is plaintiff's burden to show secondary meaning since its claimed trade dress is not registered. *E.g., Toyo Tire & Rubber v. Atturo Tire,* No. 14-cv-00206, 2019 U.S. Dist. LEXIS 219398, at *4 (N.D. Ill. Dec. 20, 2019) Secondary meaning must be established either through survey evidence or "length and manner of use, amount and manner of advertising, volume of sales,

place in the market, and evidence of intentional copying." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 15.30 (4th ed. 1999). *HiSpec Wheel & Tire v. Tredit Tire & Wheel*, 2007 U.S. Dist. LEXIS 1870, *13 (N.D. Ind. Jan. 8, 2007). Secondary meaning requires that consumers know that the product comes from a single source.

As noted above regarding genericness, it is highly unlikely that Deckers could show that any suede upper, shearling lined slipper, constructed with a seam on a rounded toe box would necessarily originate from a single source. Indeed, the plethora of alternatives in nearly the same design strongly suggest otherwise. *See, e.g., Eldon Indus. v. Rubbermaid,* 735 F. Supp. 786, 834 (N.D. Ill. 1990) (third party use negates the "exclusive use" factor for finding secondary meaning); *see also Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 67 (S.D.N.Y. 2021) (extensive third-party use in trade dress shoe design case tended to negate secondary meaning claim). Also, there is at least some anecdotal evidence that slippers of this type do not originate from a single source but instead from a variety of different sources. *See, e.g.,* Gaston Korub, *Not Getting Duped* (March 24, 2026) (available at https://perma.cc/CME2-6TVG) (last visited April 1, 2026) (wherein the author asked his students "whether anyone would buy the Quince product thinking that it was an UGG product, the response was *unanimous as well that no right-thinking person would.*") (emphasis added).

Deckers has made little to no effort to satisfy its burden of showing secondary meaning, which it must since its claimed trade dress is not registered. *See, e.g., Tone Brothers v. Sysco,* 28 F.3d 1192 (Fed. Cir. 1994). In its complaint, it claims without any specifics that its design is "inherently distinctive." Compl. ¶ 17. Among the many problems with this claim is that "an unregistered product trade dress *cannot be* inherently distinctive . . .." *National Presto Indus. v. U.S. Merchants Fin. Gp.*, No. 18-cv-03321 (SRN/BRT), 2021 U.S. Dist. LEXIS 114054, at *29 (D. Minn. June 18, 2021) (*citing Wal-Mart Stores, Inc.*, 529 U.S. at 216 ("[A] product's design is

distinctive . . . only upon a showing of secondary meaning."); *see also id.* ("given the *unlikelihood* of inherently source-identifying design, the game of allowing suit based upon alleged inherent distinctiveness seems to us not worth the candle."). The claim that it is "unique" in the industry, *see* Compl. ¶ 22, is belied by the number of defendants it has sued not only in this case but in numerous others. Given the numerous other similar looking platform suede slippers available in the sheepskin casual footwear market, even if Deckers design wasn't deemed generic, it would be incapable of showing secondary meaning. Its claim to exclusive use is dubious to say the least.

Beyond this, other allegations attempting to show secondary meaning are lacking and often facially suspect. For example, Decker's alleges that Oprah Winfrey featured UGG boots on her "favorite things" show and proclaimed that she "LOOOOOOOVES [sic] her UGG boots." *See* Compl. ¶ 7. But what Deckers glosses over is that Oprah said that 26 years ago about a product that is not at issue in this case. Indeed, Deckers admits it first started selling the product at issue here more than 20 years *after* Oprah talked about a completely different product. Whatever Oprah said more than a quarter century ago about a different product has no bearing on whether its currently-claimed trade dress has secondary meaning.

Deckers' reference to advertising for products unrelated to the one at issue here and to promoting the UGG name rather than the claimed trade dress here fares no better. *See. e.g.,* Compl. ¶¶ 20-22. The USPTO rejected similar evidence when Deckers tried unsuccessfully to register their UGG boots. *See* Final Office Action Rejecting U.S. TRADEMARK APPLICATION NO. 87310138 – 122688 (Dec. 22, 2017) (available at https://bit.ly/419LISu) (hereafter "Final Rejection") (last visited April 1, 2026). There, the USPTO rejected Deckers' application to register its UGG boot (design shown below), which claimed to be distinctive, *inter alia*, based on an "exaggerated stitch pattern," Final Rejection at 12, stating that "[Deckers'] advertising and third-party materials show consumer recognition of the word mark "UGG" but

these are not probative of whether consumers associate the specific design elements claimed as features of the proposed mark with a single source." *Id.* at 6-7.[13]

*c. Deckers' Claimed Trade Dress Is Functional and Therefore Unprotectable*

Trade dress is functional — and therefore categorically ineligible for Lanham Act protection — if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (quoting *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 850 n.10 (1982)); *see also TrafFix Devices, v. Marketing Displays,* 532 U.S. 23, 33 (2001). The features Deckers identifies as its trade dress are functional characteristics that define what a slipper is and make it comfortable, warm, wearable, and easy to construct.

The case of *Deckers Outdoor Corp. v. It's Friday, Inc.* from the Southern District of New York – despite involving a completely different Deckers' product – is nevertheless instructive. *See* No. 20-CV-10602 (VSB) (BCM), 2024 WL 5481211, at *6 (S.D.N.Y. Oct. 31, 2024), *report and recommendation adopted,* No. 20-CV-10602 (VSB) (BCM), 2025 WL 886882 (S.D.N.Y. Mar. 21, 2025). There, even after default, the magistrate judge examined Deckers' trade dress pleading and found it legally insufficient, describing a "laundry list" of features "with no explanation" of distinctiveness and identifying elements that were "quite obviously functional in the traditional sense." *Id.* The court recommended dismissal of the trade dress claims despite the absence of opposition. *Id.* While an entirely different product is at issue here, Deckers has done the same thing – namely, provided a "laundry list" of features without explanation of their distinctiveness or their lack of utilitarian or aesthetic functionality.

Permitting Deckers to monopolize the functional features of a suede slipper through trade dress law would give it an unfair competitive advantage — preventing competitors from making

[13] The design that Oprah declared one of her "favorite things" appears to be the same design that the USPTO rejected for registration as a protectable trade dress.

similar suede upper, shearling lined footwear — which is exactly the harm that the functionality doctrine is designed to prevent. *TrafFix*, 532 U.S. at 29. Litfun would establish that the claimed trade dress elements are functional and thus unprotectable as a matter of law.

## II. The Judgment Against Litfun Should Be Vacated Because Deckers Obtained it Through Litigation Misconduct

Judge shopping is sanctionable conduct. Deckers engaged in egregious judge shopping in this and related cases through its "pinching" scheme. Deckers' judge shopping conduct is not limited to this case but is widespread. In fact, it is only *because* it is widespread that it was discovered here.[14] Judgment should be vacated and Deckers should be sanctioned for its vexatious litigation conduct – namely, its judge shopping scheme and its efforts to conceal that scheme from the Judges of this Court.

### *A. Judge Shopping is Bad.*

It should go without saying, but judge shopping is bad. In *Bose Corp. v. Schedule A Defendants,* No. 19-cv-7467, 2019 WL 6210939 at *1 (N.D. Ill. Nov. 21, 2019), Judge Durkin noted that the problem is not simply the seeking and obtaining a judge perceived to be favorable, but the appearance of impropriety and even without intent, said the practice "must stop." *Id.*;[15] *see also Doe v. Schedule A Defendants,*[16] No. 20-cv-4099 (N.D. Ill. July 14, 2020) (Dkt 15) (Tharp, J.)

---

[14] Litfun appears to be the *only* defendant named in both the ASOOFINE and AKEANH6X696JN schemes. It is not unclear, but defendant "Vollenlachen" here may be the same party that was the caption-named defendant in the "Vollenlachen Scheme," which appears to be among the earliest. (Ex A). None of the other defendants in this case would have reason to be aware or believe that they had been part of and victimized by Deckers' judge-shopping scheme.

[15] The "appearance of impropriety" is important. Judge shopping is not an exact science. Coincidentally, Judge Durkin, who's harsh words are quoted above, appears to be one of Deckers' preferred judges for its cases. *See* Deckers Judge Shopping Chart (Ex A).

[16] Litfun citations here do not in all instances conform to the case-naming practices that Deckers and its attorneys have used. For simplicity, for these "Schedule A" cases, Litfun uses the case name format: "*[Named Plaintiff] v. Schedule A Defendants*."

(noting that creating an appearance of judge shopping even without a showing of intent "gives rise to concerns regarding forum shopping and undermines the integrity of the Court's random case assignment process) (attached as Ex. I).[17]

The Northern District is not unique. A district court in Utah stated that judge shopping should be subject to "universal condemnation." *U.S. v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) and the Eleventh Circuit referred to the practice as a "threat to the orderly administration of justice." *In re Bellsouth,* 334 F.3d 941, 958 (11th Cir. 2003) (collecting and discussing other cases condemning the practice). Another judge in the District of Puerto Rico noted, judge shopping "disrupts the proper functioning of the judicial system and may be disciplined." *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69 (D.P.R. 2004) (Casellas, J.) (citing *Standing Comm. On Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman,* 55 F.3d 1430, 1443 (9th Cir. 1995)). These, "attempts to manipulate the random case assignment process are *subject to universal condemnation*." *Phillips,* 59 F. Supp. 2d at 1180 (emphasis added) (*citing United States v. Conforte,* 457 F. Supp. 641, 652 (D. Nev. 1978), aff'd, 624 F.2d 869 (9th Cir. 1980)). Beyond the obvious issues of fairness, judge shopping also negatively implicates issues of judicial economy and resource allocation. *E.g., Oxbow Energy v. Koch Indus.,* 686 F. Supp. 278, 282 (D. Kan. 1988).

*B. Pinching is Judge Shopping.*

Pinching schemes like Deckers uses here and elsewhere are a version of judge shopping. *See* Fackrell, *Pinching and Pressing* at 64-65 (*citing inter alia Stiebritz v. Schedule A*, No. 1:25-cv-

---

[17] The *Doe* case before Judge Tharp involved "past-posting," which is when the Schedule A plaintiff withholds the "Schedule" until after the judge is assigned, making it more difficult, if not impossible to determine to which defendants Rule 41, and thus *res judicata*, applied. *See* Sarah Fackrell, *Defendant Pinching & Pressing*, , 104 Wash. U. L. Rev. __ (forthcoming 2027) (attached as Ex K) (hereafter "Fackrell, *Pinching and Pressing*") at 56 n.271, 77(coining the phrase "past-posting" gaming law).

03459 (N.D. Ill. Apr. 9, 2025) (Dkt 19)) (*Stiebritz* order attached as Ex J) (Fackrell as Ex K).[18] In this form, pinching as judge shopping receives no less scorn than "traditional" judge shopping. Judge Tharp referred to pinching as "blatant forum shopping" and a "nefarious" practice in *Dongguan Deego Trading Co. v. Junyao-US*, No. 25 C 4962, 2025 WL 2174325 *2 (N.D. Ill. Jul. 31, 2025); *see also Marshall Amplification v. Xingrunshangmao*, No. 25-cv-13829 (Blakey, J.) (Dkt. 22) (Ex L) (referring to pinching scheme as "an egregious form of judge shopping.").

*C. Decker's Egregious Litigation Misconduct Warrants Vacatur and Sanctions.*

Deckers and its counsel were engaged in egregious and widespread judge shopping in this case and others. Deckers failed to disclose that Litfun had been sued on identical factual allegations and identical legal bases six times previously and had been dismissed voluntarily six times. Deckers, through its attorneys here, engaged in this active concealment of its judge-shopping scheme despite being explicitly admonished to stop its "egregious" judge-shopping and pinching practices. *See, infra.* at 27 (*citing* LAW360 article).

1. Default Judgment Should be Vacated Because of Deckers' Litigation Misconduct.

Deckers obtained its default judgment in this case (Dkt 53) aided by its pinching scheme, including active concealment of its repeated filings against and dismissals of Litfun and other co-defendants. Rule 60(b)(3) provides that this Court may relieve a party of final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Deckers obtained its judgment through fraud, misrepresentation, and misconduct – *i.e.*, though its rampant judge shopping and concealment of that scheme, including concealment of its multiple prior voluntary dismissals of Litfun from identical lawsuits.

[18] "Pinching" refers to the filing of a lawsuit with multiple defendants (75 in this case) and if a judge is not perceived as advantageous, voluntarily dismissing 74 of them through an amended complaint, and re-filing against the 74 who were pinched off in a new suit in an identical new case.

This provides a basis for relief from judgment but also for sanctions, as more fully explained below.

2. Courts Have Authority to Levy Sanctions under § 1927 and the Court's Inherent Authority.

Courts have located the authority for such sanctions in 28 U.S.C. § 1927 and the Court's inherent authority to manage its docket and the parties that appear before it. *Dongguan Deego Trading*, 2025 WL 2174325 at *7-12. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. It permits courts to award reasonable attorneys' fees and costs against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *Id.*; *see also Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir. 1992) (the term "vexatious" in § 1927 means "either subjective or objective bad faith"). Such awards are appropriate when an attorney behaves in an "objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir. 1988).

District courts have "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up). That authority "includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* "A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, (1991));

*see also Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (sanctions are warranted when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound").

3. There are A Range of Sanctions Appropriate for Plaintiffs Who Engage In Judge Shopping.

Courts in this District have found that when judge shopping is suspected or found, there is a presumption that a dismissal sanction is proper, which presumption the plaintiff must rebut. *See, e.g., M OU v. Schedule A Defendants*, No. 25-cv-13203 (Nov. 25, 2025) (Kness, J.) (Dkt 15). With evidence to show pinching and judge shopping, both dismissal and an award of attorneys' fees associated with the pinching activity is warranted as a sanction. *See, e.g., Dongguan Deego Trading*, 2025 WL 2174325 at 5-6; *see also Marshall Amplification, supra.*

4. Sanctions Are Necessary to Compensate for the Harm it has Caused and to Deter Deckers from Engaging in Judge Shopping in the Future.

Without sanctions, Deckers' and Greer Burns' conduct will continue unabated. "Two purposes of sanctions pursuant to the inherent power are punishing a party's dishonesty and deterring others who might consider similar misconduct." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 850 (N.D. Ill. 2023) (citing *Sanders v. Melvin,* 25 F.4th 475, 481-82 (7th Cir. 2022)) (cleaned up). Even when parties and their attorneys are chastised in public filings or in open court, unfortunately, many persist in their behavior. Surprisingly as explained below, such admonishments appear to have accelerated such misconduct in this and related cases. *Compare* Hailey Konnath, *'Egregious' Judge Shopping Sanctioned in Ill. TM Case*, (Law360) (attached as Ex D) (Jan. 16, 2026) (quoting Deckers' attorney here Amy Ziegler as stating "[w]e respect the court's decision.") *with* Deckers Judge Shopping Chart (Ex A). Any sanction should be substantial enough to deter Deckers and others who engage in this behavior from pursuing it again.

5. Deckers Has Engaged in Judge Shopping Here and Has Used Judge-Shopping Schemes Pervasively in this District – Securing Tens of Millions of Dollars in Judgments from Defendants Whose Cases Should Have been Dismissed with Prejudice Had Deckers Not Concealed its Pinching Scheme.

As shown above, Deckers manipulating filings so it can eventually land on a judge that it believes will be more favorable and sympathetic to its claims, procedurally and substantively. Deckers filed the same claims on the same claimed trade dress against the same defendants in this case twice and combined with other scheme, filed the same claims against Litfun eight times. This is bad enough on its own. There is no plausible, justifiable, non-"nefarious" (to borrow Judge Seegers term) explanation for its conduct.

Deckers' judge shopping, though, is not limited to just this one case (or series of pinched cases). Although tedious to track down, Deckers' judge-shopping practices seem to extend far beyond this case. Deckers implements these schemes with the assistance and perhaps direction from its attorneys, Greer Burns who are jointly conducting the judge-shopping schemes. Together they are manipulating this Court's random judge selection process, concealing their scheme from the courts, and absconding with millions of dollars from defendants whose cases should have been dismissed under Rule 41 (a)(1)(B) had the true facts been known.

In *Marshall Amplification, noted supra,* Judge Blakey called the exact same kind of pinching scheme that Deckers and Greer Burns used here a "willful abuse of the judicial process" and an "egregious form of forum shopping," which "consumes scare judicial resources." (Dkt No. 22) (attached as Ex B). Judge Blakey dismissed Marshall Amplification's action in its entirety with prejudice for the plaintiff Marshall Amplification and its attorneys at Greer Burns for their extreme litigation misconduct. *Id.*

What is perhaps more remarkable than the underlying judge-shopping scheme – which Greer Burns attorneys repeated here – is that Judge Blakey's ruling seems to have had no

deterrence effect whatsoever. Two of five re-filings in the Bei Duo Scheme occurred *after* judge Blakey called out this egregious misconduct. That scheme started before Judge Blakey's admonishment but continued after:

| Filing Date | Case No. | Trade Dress Asserted | Assigned Judge | No. of Defendants | Deckers' Action | Pinch Amendment |
|---|---|---|---|---|---|---|
| 01-07-26 | 26-cv-108 | TASMAN | Gottschall | 75 | Amended to drop all but one defendant. | 01-07-26 |
| 01-07-26 | 26-cv-157 | TASMAN | Ellis | 74 | SAME | 01-08-26 |
| 01-09-26 | 26-cv-268 | TASMAN | Harjani | 73 | SAME | 01-12-26 |
| 01-12-26 | Judge Blakey sanctions Greer Burns's client Marshall Amplification for judge shopping and abuse of process. | | | | | |
| 01-13-26 | 26-cv-381 | TASMAN | Cummings | 72 | SAME | 01-15-26 |
| 01-16-26 | 26-cv-540 | TASMAN | Kennelly | 71 | SAME | N/A |

And two other judge-shopping schemes started and finished in their entirety after Judge Blakey's ruling.[19] *See* Deckers Judge Shopping Chart (Ex A). Even the sanction of dismissal of a client's case and being called out in the public record for engaging in egregious litigation misconduct did not deter Greer Burns attorneys or Deckers from continuing its judge-shopping schemes.[20]

6. Monetary Sanctions.

In a just world, Deckers and its counsel would be sanctioned $2,255,907.21 in this case, which includes $576,719.64 to Litfun – the total value of the judgment that Deckers and its counsel fraudulently obtained and attempted to take from Litfun and its co-defendants. (Dkt at 54 at 4). Litfun, however, is mindful that any sanction must be compensatory in nature and designed to deter future misconduct and not punitive, and seeks far less.

[19] In the wake of Judge Blakey's ruling, Greer Burns clients continued two rounds of judge shopping in the Birene Scheme, and executed the *entirety* of the Clpp'Li and Birene Schemes *after* counsel promised to "respect the court's decision." *See* Deckers Judge Shopping Chart (Ex A) (showing judge shopping activity after Judge Blakey's Jan. 12, 2026, ruling).

[20] The extent of Deckers' judge-shopping scheme is not entirely known but appears massive. The Deckers Judge Shopping Chart analyzes only cases from this Court and only cases suing on the claimed TASMAN trade dress. Given Judge Blakey's ruling in the *Marshall Amplification* case for a completely different Greer Burns plaintiff, it is almost certainly the case that the practice is even more widespread than uncovered here.

Awarding all of Litfun's attorneys fees and costs should be the minimum. The amount of any fee award will be dwarfed, though, by the amounts Deckers and Greer Burns would be able to collect if they remain undeterred. The Court should invoke its inherent authority and treble the award of attorney's fees as this motion vindicates public interest in the integrity of the court system, and triggers this Court's initial scrutiny of docket-multiplying judge-shopping conduct.

7. The Court Should Also Impose Non-Monetary Sanctions for Deckers' Brazen Judge Shopping Schemes.

It is clear based on past practice that merely dismissing this matter with prejudice is not a sufficient sanction to deter Deckers' and Greer Burns rampant abuse of judicial process and judge shopping schemes. The Court should dismiss this case with prejudice against Litfun as a start. The Court must banish the notion that a nearly $600,000 judgment could stand when obtained by such misconduct, *vacatur* and dismissal with prejudice being the minimum. While there may be further non-monetary sanctions appropriate to deter future misconduct, Litfun is a single defendant and requests only that which makes it whole and prevents further harm to it.

## III. Alternative Relief

Should the Court analyze the above-disclosed Deckers judge shopping and pinching scheme, Deckers' failure to serve Litfun properly with service of process under the Hague Convention, and the implications of multiple prior voluntary dismissals, but nonetheless permit Deckers to go without sanction, it should at least permit Litfun to defend itself on the merits from Deckers' demonstrably unmeritorious trade-dress claims.

## CONCLUSION

Deckers' and Greer Burns' judge-shopping schemes are brazen, widespread, nefarious, and an abuse of process. This misconduct is stacked on top of the thinnest of trade dress claims, which appear rushed to avoid a genericness ruling and rely entirely on bewildered foreign defendants not

showing up after exposure to Kafkaesque multiple-case dismissals and refilngs. Litfun was admittedly neglectful to a limited extent, not responding to Deckers' complaint when it was due. But that neglect was minimal and excusable. Penalizing Litfun with a nearly $600,000 judgment for its delay, especially given the confusion caused by Deckers' judge-shopping schemes, the misconduct of the scheme itself, and the numerous defenses on the merits, any one of which would extinguish Deckers' case against Litfun is not warranted.

Dated: April 2, 2026

Respectfully submitted,

*/s/ Michael La Porte*

**Michael R. La Porte**
Dunlap Bennett & Ludwig, PLLC
333 N. Michigan Avenue, Suite 2700
Chicago, IL 60601
Telephone: (312) 551-9500
mlaporte@dbllawyers.com

*Counsel for Litfun*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record who have filed an appearance in this matter.

The remaining parties I have served via electronic mail at the addresses listed below.

| Defendant/Seller Alias | Email Address |
|---|---|
| JINDASHANGMAO | 17689394116@163.com |
| HOME BETTER | 18112536716@163.com |
| Patayia-Direct | 287675959@qq.com |
| Qice | 2920295868@qq.com |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| chenzzi | chenztao1101@outlook.com |
| Unimaglif | cpadcy3005@163.com |
| DILI-STORE | dilikejiyxgs@163.com |
| Dongxihui | dongxihuiqz@163.com |
| [redacted] | [redacted] |
| XIAOXIAO88 | huangxj32@163.com |
| ASOOFINE | isoofine@163.com |
| VOLLENLACHEN | jarrysaillen@hotmail.com |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| YPNSWP | lzzying1818@163.com |
| B&XY | mxyshoes@163.com |
| Kaitan Liu | qzyiminyadianji@126.com |
| [redacted] | [redacted] |
| XAIODRAGONSKY | ssfodkei221010@outlook.com |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| VeerMo | veermo@outlook.com |
| JENNY_apo_shop | www.646434148@qq.com |
| [redacted] | [redacted] |

*/s/ Michael R. La Porte*
Michael R. La Porte