**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ASOOFINE, et al.,<br><br>Defendants. | Case No. 25-cv-10080<br><br>**Judge Manish S. Shah**<br><br>**Magistrate Judge David Weisman** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT, DISMISS WITH PREJUDICE, AND FOR SANCTIONS OR IN THE ALTERNATIVE FOR LEAVE TO ANSWER OR OTHERWISE PLEAD**

Plaintiff Deckers Outdoor Corporation ("Deckers") responds in opposition to Defendant Litfun's ("Defendant") Motion to Vacate Default Judgment, Dismiss with Prejudice, and for Sanctions or in the Alternative for Leave to Answer or Otherwise Plead [83] (the "Motion"). The Motion should be denied.

## TABLE OF CONTENTS


TABLE OF CASES ..................................................................................................... iii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

I. The Parties ............................................................................................................... 2

A. Deckers and the Tasman® Trade Dress ................................................................ 2

B. Defendant and its Unlawful Acts ........................................................................... 2

II. Procedural History ................................................................................................. 3

ARGUMENT ................................................................................................................ 3

I. Legal Standard Under Rule 60(b) ............................................................................ 3

II. The Motion Should be Denied as Untimely ............................................................ 4

III. Defendant is Not Entitled to Relief Under Rule 60(b)(3) ....................................... 6

IV. Defendant Is Not Entitled To Relief Under Rule 60(b)(1) ....................................... 8

A. Defendant Fails to Establish Good Cause for its Default ....................................... 9

B. Defendant Failed to Establish Quick Action to Correct its Default ....................... 11

C. Defendant Failed to Establish a Meritorious Defense ........................................... 11

V. Defendant's Challenge to Service Fails ................................................................. 17

A. Defendant was Properly Served Under Rule 4(f)(3) ............................................. 19

CONCLUSION ............................................................................................................ 28

## TABLE OF CASES


*Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557 (7th Cir. 2017) ........................................ 4, 8

*Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348 (7th Cir. 2015) ................................................ 13

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ........................................................................................................................ 20

*AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420 (1st Cir. 2015)............................................. 22

April 10, 2026, Hearing Transcript, *Deckers Outdoor Corporation v. bei duo, et al.*, No. 26-cv-00540 (N.D. Ill. April 10, 2026) (Kennelly, J.) .................... 6, 7, 8, 12

*Ashford v. Steuart*, 657 F.2d 1053 (9th Cir. 1981) ......................................................................... 4

*Auto. Fin. Corp. v. Bishay*, 341 F. App'x 203 (7th Cir. 2009)...................................................... 11

*Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845 (7th Cir. 2009) ....... 9

*Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398 (7th Cir. 1986)................................................... 18

*Beckel v. Wal-Mart Assocs.*, 301 F.3d 621 (7th Cir. 2002).......................................................... 10

*Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772 (7th Cir. 2001) ......................................... 12

*Bieganek v. Taylor*, 801 F.2d 879 (7th Cir. 1986) ........................................................................ 5

*Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994) ................................................................................ 15

*Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182 (7th Cir. 1982) .................... 15

*C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (7th Cir. 1984)................ 9, 10

*Carr v. Pouilloux, S.A.*, 947 F. Supp. 393 (C.D. Ill. 1996) .......................................................... 19

*Casio Comput. Co. v. Noren*, 35 F. App'x 247 (7th Cir. 2002)......................................... 3, 4, 5, 10

*Casio Computer Co., Ltd. v. The Individuals, et al.*, No. 25-cv-14336 (N.D. Ill. Dec. 5, 2025), ECF No. 18............................................................................. 8

*Cent. States v. Event Media Inc.*, 135 F.4th 529 (7th Cir. 2025).................................................. 24

*Central Laborers' Pension v. W.C. Beiser Concrete Co.*, 2011 U.S. Dist. LEXIS 43795 (S.D. Ill. Apr. 21, 2011) ......................................................................................................................... 5

*Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)................................................................. 20

*Chanel, Inc. v. Handbagstore*, 2021 U.S. Dist. LEXIS 122842 (S.D. Fla. June 30, 2021) .......... 20

*Chapter 4 Corp. v. The P'ships*, 2021 WL 1906461 (N.D. Ill. May 12, 2021) .............................. 5

*Chase Int'l, Inc. v. Link & Pan of Texas, Inc.*, 1995 WL 506056 (N.D. Ill. Aug. 17, 1995) ........... 4

*Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119 (7th Cir. 1987) .................................................. 15

*Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
970 F.3d 1269 (10th Cir. 2020) ........................................................................................... 22, 24

*Coney Island Auto. Parts Unlimited, Inc. v. Burton*, 607 U.S. 155 (2026) .............................. 4, 18

*Cua v. Corsolutions Med., Inc.*, 2005 U.S. Dist. LEXIS 14176 (N.D. Ill. July 13, 2005) ............. 8

*De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747 (11th Cir. 2016) .............. 22

*Dean v. City Of Chicago*, 2009 U.S. Dist. LEXIS 78443 (N.D. Ill. Aug. 31, 2009) ...................... 7

*Deckers Outdoor Corp. v. Project Cloud LLC*,
2026 U.S. Dist. LEXIS 3680 (C.D. Cal. Jan. 7, 2026) ......................................................... 16, 17

*Deckers Outdoor Corporation v. Romeo and Juliette, Inc.*, No. 26-1682 (Fed. Cir. 2026) ........... 1

*Deckers v. Romeo & Juliette*, No. 2:25-cv-04220,
2026 U.S. Dist. LEXIS 66958 (C.D. Cal. Mar. 20, 2026) ............................................................ 1

*Dee-K Enters. v. Heveafil SDN. Bhd.*, 174 F.R.D. 376 (E.D. Va. 1997) ...................................... 24

*Di Vito v. Fid. & Deposit Co.*, 361 F.2d 936 (7th Cir. 1966) ......................................................... 4

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839 (N.D. Ill. 2021) ............... 20

*Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs*., 7 F.4th 555 (7th Cir. 2021) ...... 13

*Easley v. Kirmsee*, 382 F.3d 693 (7th Cir. 2004) ............................................................................ 9

*Enovative Techs., LLC v. Leor,* 622 F. App'x 212, 214 (4th Cir. 2015) ....................................... 22

*Fairly Odd Treasures v. The P'ships*, 2020 WL 8093511 (N.D. Ill. Oct. 28, 2020) ....................... 5

*Fields v. City of Chi.*, 981 F.3d 534 (7th Cir. 2020) ..................................................................... 18

*G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) ......................................... 18

*Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir. 1989) ................................ 7

*Hallmark Licensing LLC v. The P'ships*,
No. 24-cv-00112 (N.D. Ill. Mar. 31, 2025), ECF No. 70 ............................................................ 19

*Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*,

2021 U.S. Dist. LEXIS 64064 (N.D. Ill. Apr. 1, 2021)........................................................... 22, 28
*In re LB Steel, LLC*, 572 B.R. 690 (Bankr. N.D. Ill. 2017)........................................................... 11

*In re Oneplus Tech. Co.*, 2021 U.S. App. LEXIS 27282 (Fed. Cir. Sep. 10, 2021)................ 21, 22

*In re Vista-Pro Auto.*, 109 F.4th 438 (6th Cir. 2024)...................................................................... 4

*In re Whitney-Forbes, Inc.*, 770 F.2d 692, 696 (7th Cir. 1985)..................................................... 18

*Interfocus Inc. v. Hibobi Tech. LTD*, 2023 U.S. Dist. LEXIS 99072 (N.D. Ill. June 7, 2023) ..... 12

*Jones v. Phipps*, 39 F.3d 158 (7th Cir. 1994) ........................................................................ passim

*Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601 (7th Cir. 1986) .................................................... 4

*Kei & Chris LLC v. P'Ships, et al.*, No. 24-cv-12680 (N.D. Ill. Feb. 3, 2026), ECF No. 127...... 11

*Kennedy v. Schneider Elec.*, 893 F.3d 414 (7th Cir. 2018) ............................................................ 6

*Kopec v. City of Elmhurst*, 193 F.3d 894 (7th Cir. 1999)............................................................. 24

*Leadership Council for Metro. Open Cmtys. v. Hu*,
2000 U.S. App. LEXIS 8726 (7th Cir. Apr. 27, 2000)..................................................................... 8

*Longs v. City of S. Bend*, 201 F. App'x 361 (7th Cir. 2006) ........................................................... 9

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 2019 U.S. Dist. LEXIS 93466 (N.D. Ill. June 4, 2019) .. 26

*Manning v. Ashland Oil Co.*, 721 F.2d 192, 197 (7th Cir. 1983) .................................................. 14

*Marcure v. Lynn*, 992 F.3d 625 (7th Cir. 2021)............................................................................ 22

*Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999)......................................................................... 14

*Medrad, Inc. v. Sprite Dev., LLC*, 2012 U.S. Dist. LEXIS 59513 (N.D. Ill. Apr. 30, 2012)........... 9

*Milwaukee Elec. Tool Corp. v. Individuals, et al.*,
2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025)............................................................. 28

*Milwaukee Elec. Tool Corp. v. The Individuals, et al.*,
No. 25-cv-09002 (N.D. Ill. Sept. 10, 2025), ECF No. 13 .............................................................. 8

*Milwaukee Elec. Tool Corp. v. The Individuals, et al.*,
No. 25-cv-09162 (N.D. Ill. Aug. 26, 2025), ECF No. 19 .............................................................. 8

*Moje v. Fed. Hockey League*, 792 F.3d 756 (7th Cir. 2015) ......................................................... 10

*Multi-Ad Servs. v. NLRB*, 255 F.3d 363 (7th Cir. 2001).............................................................. 19

*Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018) .................................... 21

*NBA Props. v. P'ships, et al.*, 549 F. Supp. 3d 790 (N.D. Ill. 2021)...................................... 21, 23

*Nelson v. City Colls. of Chi.*, 962 F.2d 754 (7th Cir. 1992) .......................................................... 9

*Nelson v. Napolitano*, 657 F.3d 586 (7th Cir. 2011) ................................................................... 18

*New NGC, Inc. v. Alpinebay, Inc.*, 2019 U.S. Dist. LEXIS 236470 (N.D. Ill. Sep. 26, 2019) ..... 16

*O'Neal v. Reilly*, 961 F.3d 973 (7th Cir. 2020) ........................................................................... 18

*Papachristos v. Hilton Mgmt., LLC*, 2015 U.S. Dist. LEXIS 28708 (N.D. Ill. Mar. 10, 2015)...... 7

*Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316 (N.D. Ill. 2024).............. 22, 23, 26, 27

*Philos Techs., Inc. v. Philos & D, Inc.* 645 F.3d 851 (7th Cir. 2011)........................................... 18

*Piechowicz v. P'ships*, 2024 U.S. Dist. LEXIS 176326 (S.D.N.Y. Sep. 24, 2024) ....................... 19

*Planet Corp. v. Sullivan*, 702 F.2d 123 (7th Cir. 1983)................................................................... 4

*Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42 (7th Cir. 1994)................................... 4, 8, 11

*Provident Sav. Bank v. Popovich*, 71 F.3d 696 (7th Cir. 1995) ....................................................... 6

*Republic of Sudan v. Harrison*, 587 U.S. 1 (2019) ........................................................................ 22

*Richards v. Burgett, Inc.*, 2011 U.S. Dist. LEXIS 35987 (N.D. Ill. Apr. 4, 2011) ....................... 14

*Richards v. Eli Lilly & Co.*, 149 F.4th 901 (7th Cir. 2025) ............................................................ 7

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ............................. 21, 22, 23

*Roadget Bus. PTE. Ltd. v. Individuals*,
2024 U.S. Dist. LEXIS 77461 (N.D. Ill. Apr. 29, 2024)....................................................... 19, 20

*Robert Bosch LLC v. The Individuals, et al.*,
No. 26-cv-01197 (N.D. Ill. Mar. 9, 2026), ECF No. 32................................................................ 8

*Robert Bosch LLC v. The Individuals, et al.*,
No. 26-cv-03080 (N.D. Ill. April 2, 2026), ECF No. 24 ............................................................... 8

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492 (2020)............................................. 23

*Seiichi Oku v. Oyster Gaston5*, 2020 U.S. Dist. LEXIS 177209 (N.D. Ill. Sep. 28, 2020) ............ 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).......................... 7

*SignalQuest, Inc. v. Tien-Ming Chou & Oncque Corp.*, 284 F.R.D. 45 (D.N.H. 2012) ............... 23

*Sims v. EGA Products*, 475 F.3d 865 (7th Cir. 2007) ............... 10

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025) ............... 22, 23, 24, 26

*Smith v. Potter*, 513 F.3d 781 (7th Cir. 2008) ............... 12

*SSDD Enters. v. Vill. of Lansing*, 1997 U.S. Dist. LEXIS 4498 (N.D. Ill. Apr. 3, 1997) ............... 13

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ............... 21

*Sullivan v. Gen. Plumbing*, 2007 WL 1030236 (N.D. Ill. Mar. 31, 2007) ............... 5

*Sunstream Jet Express v. Int'l Air Serv. Co.*, 734 F.2d 1258 (7th Cir. 1984) ............... 14

*Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637 (7th Cir. 1987) ............... 13, 14

*Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996) ............... 10

*Taylor v. Brown*, 787 F.3d 851 (7th Cir. 2015) ............... 12, 13

*Thompson v. AT&T Servs.*, 2018 U.S. Dist. LEXIS 162849 (N.D. Ill. Sep. 24, 2018) ............... 19

*Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854 (7th Cir. 2016) ............... 4, 9

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) ............... 16

*Trove Brands, Ltd. Liab. Co. v. Cal. Innovations Inc.*, 2021 U.S. Dist. LEXIS 220983 (N.D. Ill. Nov. 16, 2021) ............... 15

*Turner v. Avco Corp.*, 2024 U.S. Dist. LEXIS 119787 (E.D. Pa. July 9, 2024) ............... 14

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ............... 15

*Tygris Asset Fin., Inc. v. Szollas*, 2010 U.S. Dist. LEXIS 63087 (N.D. Ill. June 21, 2010) ............... 10

*United States SEC v. Carebourn Capital, LP*, 339 F.R.D. 510 (N.D. Ill. 2021) ............... 11, 17

*United States v. $ 10,000.00 in United States Funds*, 1995 U.S. App. LEXIS 8576 (7th Cir. Apr. 11, 1995) ............... 11

*United States v. 5443 Suffield Terrace*, 607 F.3d 504 (7th Cir. 2010) ............... 10

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ............... 18

*Venson v. Altamirano*, 749 F.3d 641 (7th Cir. 2014) ............... 6

*Viahart, L.L.C. v. He Gangpeng*, 2022 U.S. App. LEXIS 3974 (5th Cir. Feb. 14, 2022) ............ 22

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) .................................. 21, 26

*Waetzig v. Halliburton Energy Services, Inc.*, 145 S. Ct. 690 (2025) .......................................... 14

*Willis v. Lepine*, 687 F.3d 826 (7th Cir. 2012) ................................................................. 17

*Yates v. United States*, 574 U.S. 528 (2015) ...................................................................... 20

*Yesh Music v. Lakewood Church*, 727 F.3d 356 (5th Cir. 2013) .................................................. 14

*Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685 (2022) ..................................................... 23

## INTRODUCTION

Defendant was properly served, received repeated notice throughout the case, but delayed bringing its Motion for four months despite having actual knowledge of the case and judgment the entire time. Defendant's months-long delay in bringing the Motion warrants denial. Defendant also fails to meet its heavy burden of establishing extraordinary circumstances under Rule 60(b).

Defendant cannot obtain relief under Rule 60(b)(3) because there is no fraud, misrepresentation, or misconduct by Deckers that prevented it from fully and fairly presenting its case. In fact, Defendant's counsel was recently informed in open court by the Honorable Judge Kennelly that his accusations of "judge shopping" had no merit, and that the Plaintiff's filings were permitted by the Federal Rules of Civil Procedure and this District's Local Rules.[1]

Further, Defendant failed to establish good cause for its default or demonstrate that Defendant took quick action to correct its default. Even though Defendant's Rule 60(b)(1) argument fails on those grounds alone, each of the "meritorious defenses" raised by Defendant also fail.[2] Defendant's challenge to service relies on non-binding, minority-view cases misinterpreting the plain language of Rule 4. The Hague Convention neither applies nor prohibits electronic service. The "two-dismissal rule" that Defendant argues bars Deckers' claims does not apply. Defendant's argument that the Tasman® Trade Dress is invalid relies on bare legal conclusions that are insufficient to establish a meritorious defense.

Finally, Defendant's requested sanctions are improper because relief under Rule 60(b) is limited to relief from the judgment. Thus, the Motion should be denied.

---

[1] Defendant withdrew its arguments in Case No. 26-cv-00540 after being admonished.

[2] Deckers has appealed *Deckers v. Romeo & Juliette*, No. 2:25-cv-04220, 2026 U.S. Dist. LEXIS 66958 (C.D. Cal. Mar. 20, 2026), to the United States Court of Appeals for the Federal Circuit. *See Deckers Outdoor Corporation v. Romeo and Juliette, Inc.*, No. 26-1682 (Fed. Cir. 2026). Deckers' opening brief is due on July 15, 2026. *See Id.*, ECF No. 13 (Fed. Cir. May 8, 2026).

## BACKGROUND

### I. The Parties

#### A. Deckers and the Tasman® Trade Dress

The UGG® Tasman®, the embodiment of the Tasman® Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. [1] ¶ 20. The UGG® Tasman® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman®, and has graced the pages of many popular magazines nationwide and internationally. *Id*. Examples of the Tasman® Trade Dress' distinctive appearance as a whole are shown below (*Id*. ¶ 18):



#### B. Defendant and its Unlawful Acts

Defendant is an e-commerce store operator selling footwear products on amazon.com in the U.S. that infringed Deckers' Tasman® Trade Dress (the "Infringing Product"). [1] ¶ 3; *see* [1-1]. Defendant listed an entity called "Yi Wu Shi Yue Qi Dian Zi Shang Wu You Xian Gong Si" as its business name on its Amazon.com store, and input that its address is "义乌市北苑街道, 莲塘2区21幢2单元402室, 金华市, 浙江, 322000, CN." *See* Ex. 1, Declaration of Justin R. Gaudio (hereafter, "Gaudio Decl.) ¶ 3. Deckers searched for the address and entity on Google Maps, Baidu Maps, and Bing Maps. *See id.* ¶ 4. The searches did not locate this address and/or did not locate

Defendant at this address. Ex. 2, *id*. ¶ 4. Defendant claims that it was also sued in *Deckers Outdoor Corp v. AKEANH6X696JN, et al.*, No. 25-cv-15281 for infringing the Tasman® Trade Dress. [84] 4. However, in that case, Deckers sued a Walmart store using the alias "LITFUN" for infringing the Tasman® Trade Dress. Gaudio Decl. ¶ 7. The "LITFUN" store in No. 25-cv-15281 listed an entity called "Yiwu YueQi E-Commerce Co., Ltd." as its business name, and input the address "Zhejiangsheng yiwushi beiyuanjiedao liantang2qu 21zhuang2danyuan402shi, Yiwu, ZJ 322000." *Id*. Regardless, the searches did not locate this address and/or did not locate Defendant at this address. *See* Ex. 3, Gaudio Decl. ¶ 8.

## II. Procedural History

Deckers filed this action on August 22, 2025. [1]. On September 2, 2025, the Court entered an Order authorizing Deckers to "provide notice of these proceedings to Defendants, including service of process pursuant to Fed. R. Civ. P. 4(f)(3)" by e-mail and electronic publication. *See* [16] ¶ 2. On September 25, 2025, Deckers served Defendant and returned an executed summons in accordance with the Court's Order [16]. *See* [19]. Deckers also provided Defendant notice of other matters throughout this case, including notice of Deckers' Motion for Entry of Default and Default Judgment as to Certain Defendants [49] and the motion hearing [52]. Ex. 5, Gaudio Decl. ¶¶ 10-13. Despite this, Defendant failed to appear at the December 16, 2025, motion hearing. *See* [53]. Accordingly, the Court entered the Final Judgment Order against, among others, Defendant on December 16, 2025. [54]. Defendant did not file the Motion until April 2, 2026. [83].

# ARGUMENT

## I. Legal Standard Under Rule 60(b)

"Rule 60(b) supplies an extraordinary remedy to be granted in exceptional circumstances." *Casio Comput. Co. v. Noren*, 35 F. App'x 247, 249 (7th Cir. 2002). Default judgments are not "easily wiped away[,]" *Chase Int'l, Inc. v. Link & Pan of Texas, Inc.*, 1995 WL 506056, at *1 (N.D.

Ill. Aug. 17, 1995), and this Circuit has "long since moved away from the position of disfavoring default judgments, and ... increasingly reluctant to set them aside. *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 47 (7th Cir. 1994). The "burden of proof rests on the party moving to vacate the judgment." *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016). Motions under Rule 60(b) must also be timely. Fed. R. Civ. P. 60(c). *See Coney Island Auto. Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 158-62 (2026). "The one-year maximum time limit" to motions under Rule 60(b)(1)-(3) "*is in addition* to, not in lieu of, the requirement that the motion be made within a 'reasonable' time." 12 Moore's Federal Practice - Civil § 60.65 (2026). They are "an extreme limit." *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986).

**II. The Motion Should be Denied as Untimely**

Rule 60(b)(c)'s timeliness requirement applies to all Rule 60(b) motions. *Burton*, 607 U.S. at 158-62 (rejecting that Rule 60(b)(4) motions may be brought at any time). In the context of a default judgment, the movant must show that the movant took quick action to respond to the default. *See Acosta v. DT & C Glob. Mgmt., LLC*, 874 F.3d 557, 560 (7th Cir. 2017).

Regardless of the terminology, "reasonable time" and "quick action" appear to be the same standard. *See Casio*, 35 F. App'x at 251 ("to be reasonable a delay ought to have a good explanation"); *see also Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir. 1983) (quoting with approval *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (30 days held unreasonable when movant offered no explanation for his failure to challenge the ruling in question on direct appeal)); *Di Vito v. Fid. & Deposit Co.*, 361 F.2d 936, 939 (7th Cir. 1966) ("equity aids the vigilant."). The focus is on when the defendant became aware of the relevant facts. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994); *In re Vista-Pro Auto.*, 109 F.4th 438, 445-46 (6th Cir. 2024), *aff'd*, *Burton*, 607 U.S. 155 (the "'reasonable time' clock governing grounds (4), (5), and (6) generally 'begins ticking when the movant is or should be aware of the factual basis for the motion").

Defendant does not dispute receiving repeated notice throughout this case and that it knew of the Final Judgment Order since at least December 16, 2025. Despite being aware of the Final Judgment Order for four months, Defendant did not file the Motion until April 2, 2026. *Phipps*, 39 F.3d at 165 (unreasonable delay where "more than a month elapsed" before moving to vacate "while [the defendant] was fully aware of the judgment against [her]."). Since Defendant failed to provide a "good explanation," this delay is unreasonable. *Casio*, 35 F. App'x at 251 (being mistaken is not excusable). *See, e.g., Sullivan v. Gen. Plumbing*, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31, 2007) (three weeks unreasonable); *Seiichi Oku v. Oyster Gaston5*, 2020 U.S. Dist. LEXIS 177209, at *6 (N.D. Ill. Sep. 28, 2020) (four weeks unreasonable); *Chapter 4 Corp. v. The P'ships*, 2021 WL 1906461, at *2 (N.D. Ill. May 12, 2021) (less than five weeks unreasonable); *Phipps*, 39 F.3d at 165 (five weeks unreasonable); *Fairly Odd Treasures v. The P'ships*, 2020 WL 8093511, at *2 (N.D. Ill. Oct. 28, 2020) (six weeks unreasonable).

Defendant's reliance on *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986) and *Central Laborers' Pension v. W.C. Beiser Concrete Co.*, 2011 U.S. Dist. LEXIS 43795, at *6 (S.D. Ill. Apr. 21, 2011) is misplaced. In *Bieganek*, the defendant only received notice of the lawsuit once. *See* 801 F.2d at 882. By contrast, Defendant received repeated notice during this case, including notice of Deckers' Motion for Entry of Default Judgment, the hearing, and entry of the Final Judgment Order. *See* Ex. 5, Gaudio Decl. ¶¶ 10-13. The court in *Bieganek* acknowledged that defendants are "properly defaulted" when they "were given various chances and warned" but "persisted in being unresponsive." 801 F.2d at 882. Thus, *Bieganek* undermines Defendant's argument.

Moreover, the defendant in *Bieganek* filed its Rule 60(b) motion within about three weeks of learning about the judgment, not four months like Defendant. *Id.* at 880 (from July 31, 1985 to August 22, 1985). *Central Laborers' Pension* is distinguishable for similar reasons, and was in

the context of Rule 55(c) motion to vacate default, not a Rule 60(b) motion to vacate default judgment. *See Phipps*, 39 F.3d at 162 ("While the tests are identical under either Rule 55(c) or Rule 60(b), respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances—where a default *judgment* has been entered—to be much more limited and stringent."). As such, both cases are inapposite, and Defendant's argument fails.

Given that Defendant's Motion is untimely, it should be denied.

## III. Defendant is Not Entitled to Relief Under Rule 60(b)(3)

"Rule 60(b)(3) provides that the court may grant a party relief from the judgment where there was 'fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.'" *Venson v. Altamirano*, 749 F.3d 641, 651 (7th Cir. 2014). "To obtain relief under this subsection, a party must prove, by clear and convincing evidence, that: (1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial. *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699 (7th Cir. 1995).

Defendant has not alleged any fraud, misrepresentation, or misconduct. Defendant does not cite any statute, local rule, or other controlling authority that Deckers has violated. *See Kennedy v. Schneider Elec.*, 893 F.3d 414, 421 (7th Cir. 2018) (fraud allegations requires more than "inferences and innuendo."). Instead, Defendant argues that Deckers is "judge shopping" based on an article that admits that Deckers is not violating any rules and that its actions are "done openly." *See* [86-1] 1. Further, at the April 10, 2026, hearing attended by Defendant's counsel, Judge Kennelly stated unambiguously on the record: "*I don't regard this as judge shopping. And I don't regard it as a violation of the local rules.*" *See* April 10, 2026, Hearing Transcript at 11:23-12:02, *Deckers Outdoor Corporation v. bei duo, et al.*, No. 26-cv-00540 (N.D. Ill. April 10, 2026) (Kennelly, J.) (the "Hr'g Tr."). Judge Kennelly further explained that amending a Schedule A

complaint to account for a particular judge's joinder practices is not a "dismissal" under the Local Rules and therefore does not require subsequent filings to return to the originally assigned judge. *Id.* at 12:03-13:11. To the contrary, forcing plaintiffs to remain before a judge who categorically rejects joinder would improperly require them to "*wait and sit silent*" while other defendants continue infringing. *Id.* at 11:18-11:22. Judge Kennelly also confirmed that this issue has been reviewed at an institutional level, including by the Northern District of Illinois local rules committee, which declined to treat these filings as improper refilings of dismissed cases.

Deckers is proceeding with its trademark claims as required by law. *See Gorenstein Enters. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989). Given the volume of online sellers, suing them individually is not effective, efficient, nor required under Rule 20. Joinder under Rule 20 is a discretionary case-management decision. *See Richards v. Eli Lilly & Co.*, 149 F.4th 901, 916 (7th Cir. 2025) (Hamilton, J., concurring in-part) ("[A]n issue of joinder or consolidation, [is a matter] of case management."). Different courts may have varying interpretations of joinder rules even under similar circumstances. *See Papachristos v. Hilton Mgmt., LLC*, 2015 U.S. Dist. LEXIS 28708, at *4 (N.D. Ill. Mar. 10, 2015); *see also Dean v. City Of Chicago*, 2009 U.S. Dist. LEXIS 78443, at *7-8 (N.D. Ill. Aug. 31, 2009). The rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010).

Courts in this District have differing views on permissive joinder in e-commerce infringement cases. *See* [86] at 2-3 (collecting cases). When a court does not allow joinder, the outcome is not that Deckers forfeits its claims against the dropped defendants. *See* Hr'g Tr. at 4:12-4:13, 11:08-11:17 ("The rule isn't that they're screwed and they don't get to sue anybody."); *see also* Fed. R. Civ. P. 21 ("[M]isjoinder of parties is not a ground for dismissing an action.").

Amending a complaint to comply with a court's discretionary case management requirements and filing a new action with the dropped claims while disclosing the prior cases is what is required by the Local Rules. *See* Hr'g Tr. at 11:08-11:17; *see also Cua v. Corsolutions Med., Inc.*, 2005 U.S. Dist. LEXIS 14176, at *3 (N.D. Ill. July 13, 2005) (discussing L.R. 40.3(b)(2)); *Tales.com, Inc. v. The P'ships, et al.*, No. 25-cv-02970 (N.D. Ill. May 29, 2025), ECF No. 58 ("It was not improper for Plaintiff to proceed against dismissed defendants in a new case considering that the judge in Case No. 25-cv-2707 concluded that the defendants had been misjoined in the first place.")

In addition, it is not possible to have a case reassigned back to the original judge. *See, e.g.*, *Casio Computer Co., Ltd. v. The Individuals, et al*., No. 25-cv-14336 (N.D. Ill. Dec. 5, 2025), ECF No. 18 (denying motion to reassign); *Milwaukee Elec. Tool Corp. v. The Individuals, et al.*, No. 25-cv-09162 (N.D. Ill. Aug. 26, 2025), ECF No. 19 (same); *Robert Bosch LLC v. The Individuals, et al.*, No. 26-cv-01197 (N.D. Ill. Mar. 9, 2026), ECF No. 32 (same); *Milwaukee Elec. Tool Corp. v. The Individuals, et al.*, No. 25-cv-09002 (N.D. Ill. Sept. 10, 2025), ECF No. 13 (same); *Robert Bosch LLC v. The Individuals, et al.*, No. 26-cv-03080 (N.D. Ill. April 2, 2026), ECF No. 24 (same).

In sum, Defendant has not identified any fraud, misrepresentation or misconduct by Deckers. Even if it had, Defendant failed to describe or establish how it was prevented from fully and fairly presenting its case. Therefore, Defendant is not entitled to relief under Rule 60(b)(3).

## IV. Defendant Is Not Entitled To Relief Under Rule 60(b)(1)

Setting aside a default judgment under Rule 60(b)(1) is appropriate only if the Defendant shows (1) "good cause" for its default; (2) took "quick action to respond to the default"; and (3) has "a meritorious defense to the underlying allegations." *Acosta*, 874 F.3d at 560. "In order to have a default judgment set aside, the defendant must meet all three requirements." *Leadership Council for Metro. Open Cmtys. v. Hu*, 2000 U.S. App. LEXIS 8726, at *8 (7th Cir. Apr. 27, 2000) (citing *Pretzel & Stouffer*, 28 F.3d at 47). Defendant fails to meet any of the requirements.

### A. Defendant Fails to Establish Good Cause for its Default

The Seventh Circuit has made it clear that the "good cause" standard under Rule 60(b) is limited and applied stringently. *Phipps*, 39 F.3d at 162. This standard requires proving "extraordinary circumstances" or "excusable neglect." *Id.* at 164. "Extraordinary circumstances" arise only where "the events contributing to the default judgment have not been within the meaningful control of the defaulting party." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984). "[N]either ignorance nor carelessness on the part of a litigant or his attorney provide grounds" for excusable neglect. *Id.*

Defendant argues that its "belie[f] that its prior counsel ... was handling this case" constitutes good cause. [84] at 8. *See Trade Well Int'l*, 825 F.3d at 861 (unsubstantiated and vague testimony is not credible). Even Defendant's statements were true, this argument "is foreclosed by the line of cases holding that an attorney's negligence, gross negligence, or wilful misconduct does not constitute grounds for relief under Rule 60(b)." *Medrad, Inc. v. Sprite Dev., LLC*, 2012 U.S. Dist. LEXIS 59513, at *9 (N.D. Ill. Apr. 30, 2012) (collecting cases). "The rule is that *all* of the attorney's misconduct … becomes the problem of the client." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009); *Longs v. City of S. Bend*, 201 F. App'x 361, 364 (7th Cir. 2006) ("attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant and regardless of the attorney's degree of culpability.").

Further, "[c]entral to the good cause prong is the requirement that a client must exercise reasonable diligence in checking with his counsel and monitoring developments in the litigation." *Nelson v. City Colls. of Chi.*, 962 F.2d 754, 756 (7th Cir. 1992); *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004) ("A party has a duty of diligence to inquire about the status of a case.").

Defendant has not shown it exercised reasonable diligence and, therefore, Defendant failed to establish good cause for its default. *Moje v. Fed. Hockey League*, 792 F.3d 756, 758 (7th Cir. 2015).

Defendant's Motion also states that Defendant defaulted because of "confusion" over the prior cases. [84] 8. However, Defendant does not offer any evidence showing that it was even aware of the other cases, much less confused by them. *See Beckel v. Wal-Mart Assocs.*, 301 F.3d 621, 623 (7th Cir. 2002) ("a lawyer's musings ... are not evidence."); *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010) ("saying so doesn't make it so."). Regardless, this amount to nothing more than "ignorance of the rules, or mistakes construing the rules" which do not constitute "excusable neglect." *Casio*, 35 F. App'x at 250. Similarly, Defendant's assertion that it "has always been [its] intent to defend itself" is irrelevant, since negligence and carelessness also cannot establish excusable neglect. *C.K.S. Eng'rs*, 726 F.2d at 1206.

Finally, Defendant's invocation of a "policy" favoring trial on the merits overlooks that this "policy applies only when the defaulting party has appeared before the entry of a default judgment." *Tygris Asset Fin., Inc. v. Szollas*, 2010 U.S. Dist. LEXIS 63087, at *8 n.3 (N.D. Ill. June 21, 2010). Likewise, Defendant's reliance on *Sims v. EGA Products*, 475 F.3d 865 (7th Cir. 2007) is misplaced because *Sims* reviewed a decision vacating default, not a default judgment. In the default context, good cause means "'good cause' for the judicial action, not 'good cause' for the defendant's error." *Id.* at 868. By contrast, under Rule 60(b), Defendant is required to establish good cause for its default. *See Phipps*, 39 F.3d 158. Given that Defendant failed to establish good cause for its default, it is not entitled to Rule 60(b)(1) relief. *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996) ("As we have previously discussed, [the defendant] has not identified good cause for its default; any further exposition would be superfluous").

### B. Defendant Failed to Establish Quick Action to Correct its Default

As discussed *supra* 4-5, Defendant failed to establish quick action to correct its default. As such, Defendant is not entitled to Rule 60(b)(1) relief, and the Motion should be denied. *See Kei & Chris LLC v. P'Ships, et al.*, No. 24-cv-12680 (N.D. Ill. Feb. 3, 2026), ECF No. 127 ("Because [the defendants] failed to take quick action to correct the default, their motion to vacate default judgment is denied.").

### C. Defendant Failed to Establish a Meritorious Defense

A meritorious defense must be "supported by a developed legal and factual basis." *Phipps,* 39 F.3d at 165. It requires more than a "general denial" and "bare legal conclusions." *Pretzel & Stouffer,* 28 F.3d at 46; *see also United States v. $ 10,000.00 in United States Funds*, 1995 U.S. App. LEXIS 8576, at *12 (7th Cir. Apr. 11, 1995) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.").

1. <u>Defendant's *Res Judicata* Argument Fails</u>

"'[C]laims based on res judicata, improper venue, and discovery abuse' [cannot] be asserted in a Rule 60(b) motion." *United States SEC v. Carebourn Capital, LP*, 339 F.R.D. 510, 514 (N.D. Ill. 2021) (citing *Auto. Fin. Corp. v. Bishay*, 341 F. App'x 203, 204 (7th Cir. 2009)). Since Defendant's *res judicata* argument is improperly raised through a Rule 60(b) motion, it fails to establish a meritorious defense and should not be considered.

Even if considered, the argument fails for several reasons. "As the party seeking the application of *res judicata*, [Defendant] has the burden of establishing all of the elements of the doctrine." *In re LB Steel, LLC*, 572 B.R. 690, 699 (Bankr. N.D. Ill. 2017). "Under federal law, res judicata has three elements: (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits." *Id.* at 700. "[D]oubts are resolved against preclusion." *Id.* at 699-700.

As a preliminary matter, Defendant continues to sell the Infringing Product in violation of the Final Judgment Order. *See* Ex. 6 Gaudio Decl. ¶ 15. "Res judicata does not bar a suit based on claims that accrue after a previous suit was filed." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008). "It does not matter whether ... the unlawful conduct is a practice, repetitive by nature ... that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated." *Id.* (citations omitted). "The filing of a suit does not entitle the defendant to continue or repeat the unlawful conduct with immunity from further suit." *Id.* Since Defendant continues selling Infringing Products, *res judicata* does not apply.

Additionally, Defendant was only previously named in Case No. 25-cv-09859. Defendant's claim that Defendant was dismissed six times previously is based on unrelated cases that named a different LITFUN store, on a different platform, registered to a different entity. [48] 4. Defendant does not offer any evidence that it is related to the entity named in the other cases. As such, only Case No. 25-cv-09859 is relevant.

Defendant's argument still fails because it was not dismissed from any case under Rule 41(a). In this Circuit, a notice of dismissal under Rule 41(a)(1) requires a dismissal of an action; "which ... means the entire case," not individual claims or parties. *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (quoting *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001)); *see also Interfocus Inc. v. Hibobi Tech. LTD*, 2023 U.S. Dist. LEXIS 99072, at *16 (N.D. Ill. June 7, 2023) ("as things stand, based on the plain language of the text, and based on precedent in this Circuit, Rule 41(a)[(1)] does not contemplate a dismissal of less than all of a case.").

Instead, Defendant was dropped under Fed. R. Civ. P. 15(a). A defendant dropped by amended complaint under Rule 15(a) has not been "voluntarily dismissed" within the meaning of Rule 41(a)(1). *See* Hr'g Tr. at 11:08-11:17. "By its own clear terms, the 'two dismissal' rule

applies only when the second dismissal is by notice under Rule 41(a)(1)." *Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.2d 637, 640 (7th Cir. 1987). The "burden of demonstrating that the plain language of the 'two dismissal' rule should not apply is particularly heavy." *SSDD Enters. v. Vill. of Lansing*, 1997 U.S. Dist. LEXIS 4498, at *45 (N.D. Ill. Apr. 3, 1997).

Defendant mischaracterizes *dicta* from *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs*., 7 F.4th 555, 559 n.4 (7th Cir. 2021). In *Meinders*, the district court dismissed two defendants for improper venue and stayed the case as to the remaining defendants. *See Meinders v. UnitedHealthcare Inc., et al.*, No 3:14-cv-00548 (S.D. Ill. July 15, 2026), ECF No. 93 ("Order [93]"). The plaintiff attempted to appeal Order [93], but the appeal was dismissed because Order [93] was not a final judgment. *Id.* at ECF No. 94; *Meinders v. United Healthcare Servs.*, No. 16-2994 (7th Cir. June 1, 2020) at ECF No. 16. On remand, the parties stipulated to dismissing the remaining defendants, which made Order [93] final. *Meinders*, No 3:14-cv-00548 at ECF No. 110. The dismissal terminated the case and resolved all claims against all parties (i.e., the entire action). Defendant also ignores that *Meinders* reaffirmed *Taylor* and stated "Rule 15(a) is the better course for voluntarily dismissing individual parties or claims." *Meinders*, 7 F.4th at 559 n.4.

Regardless, the Seventh Circuit has repeatedly construed procedures that resolved less than all claims against all parties as governed by rules other than Rule 41(a)(1). *See, e.g., Taylor*, 787 F.3d at 858 (construing Rule 41(a) dismissal of party as being made under Rule 15(a)); *Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348, 352 (7th Cir. 2015) (a judgment that "does not fully resolve [a] suit and ... functions much like an order authorizing an amended pleading that dismisses some but not all claims, *see* Fed. R. Civ. P. 15(a)[,] ... an order dismissing some but not all parties to a suit without an accompanying certification under Federal Rule of Civil Procedure 54(b)[,] or partial summary judgment, *see* Fed. R. Civ. P. 56(a)[.]" (citations omitted).

Since filing an amended complaint does not dismiss an "action," it cannot be a first or second dismissal under Rule 41(a)(1). *Richards v. Burgett, Inc.*, 2011 U.S. Dist. LEXIS 35987, at *14 (N.D. Ill. Apr. 4, 2011); *see also Turner v. Avco Corp.*, 2024 U.S. Dist. LEXIS 119787, at *7-8 (E.D. Pa. July 9, 2024). Instead, Deckers' actions were governed by Rule 15(a). *Sunstream Jet Express v. Int'l Air Serv. Co.*, 734 F.2d 1258, 1271 n.11 (7th Cir. 1984) (Rule 15 governs "amendments effecting dismissal of less than all claims by plaintiff."). Defendant does not cite any authority to support its argument that dismissals filed after an amended complaint is filed have any effect on claims or parties no longer in the case. [43] at 11-12. *Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) ("arguments that are unsupported by pertinent authority, are waived."). This argument fails because under Rule 15, the "new complaint wipes away prior pleadings" *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999), "and renders it of no legal effect." *Manning v. Ashland Oil Co.*, 721 F.2d 192, 197 (7th Cir. 1983).

Defendant also incorrectly extends the holding of *Waetzig v. Halliburton Energy Services, Inc.*, 145 S. Ct. 690 (2025). That case held that voluntary dismissals without prejudice "final" for purposes of Rule 60(b) relief. *Id.* at 696. This is a "fundamentally different question" than whether a voluntary dismissal without prejudice is a final judgment on the merits for *res judicata* purposes. *Yesh Music v. Lakewood Church*, 727 F.3d 356, 360 (5th Cir. 2013).

Since Deckers did not voluntarily dismiss the previous action, the "two dismissal rule" is inapplicable. *See Sutton*, 826 F.2d at 640. As such, Defendant's argument fails.

2. <u>The Tasman® Trade Dress is Not Generic</u>

Defendant's genericness arguments consists of only conclusory allegations with no evidence to support this defense. For example, Defendant states "Deckers' supposed trade dress describes a broad category of footwear that has been produced by hundreds of manufacturers. These features and appearance are generic and commonly used in the suede-and-sheepskin slipper

market, not distinctive indicators of any single source." [84] 18. Defendant offers no factual basis for this statement or examples of the alleged products being produced by "hundreds of manufacturers" that feature the Tasman® Trade Dress. *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982) ("The showing of a meritorious defense that is necessary to set aside a default requires more than the bare legal conclusions set forth in defendants' proposed answer."). Defendant's reliance on a District Court's partial-summary judgment decision in *Deckers Outdoor v. Last Brand, Inc.*, 2025 U.S. Dist. LEXIS 195922 (N.D. Cal. 2025) is improper and does not have any effect on the merits of Defendant's Motion to Vacate. *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("District judges in this circuit must not treat decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling… Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits.") Accordingly, Defendant has not established a defense of genericness.

3. The Tasman® Trade Dress Has Attained Secondary Meaning

"Secondary meaning is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992). "A plaintiff can show secondary meaning through evidence that 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Trove Brands, Ltd. Liab. Co. v. Cal. Innovations Inc.*, 2021 U.S. Dist. LEXIS 220983, at *8 (N.D. Ill. Nov. 16, 2021).

Deckers was not required to *prove* secondary meaning at the pleading stage, and Defendant does not dispute that Deckers sufficiently pled the Tasman® Trade Dress attained secondary meaning. *See id.* at *10 ("At this stage, [plaintiff] need only plead a plausible 'link in the minds of consumers between the [product] and its source.'"); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) ("When a default judgment is entered, facts alleged in the complaint may not be

contested.”). Deckers alleged that it has sold “millions of dollars’ worth of the UGG® Tasman®, the embodiment of the Tasman® Trade Dress,” the Tasman® Trade Dress has solicited media attention, and has been advertised at great costs to Deckers. [1] ¶¶ 20-22. Deckers’ allegations are specific to the Tasman® Trade Dress. *Id.* Accordingly, Deckers has sufficiently shown that the Tasman® Trade Dress has “achieved a high degree of consumer recognition and secondary meaning.”[3] *See Deckers Outdoor Corp. v. Project Cloud LLC*, 2026 U.S. Dist. LEXIS 3680, at *9 (C.D. Cal. Jan. 7, 2026) (finding Deckers sufficiently alleged the Tasman® Trade Dress attained secondary meaning through significantly similar pleadings).

Defendant’s argument relies on an irrelevant trade dress application ([84] 21) and conclusory assertions regarding secondary meaning. [84] 19-21. However, Defendant fails to show any evidence that there are “numerous” other products or “plethora of alternatives” featuring the Tasman® Trade Dress.

4. <u>Defendant Has Not Established a Defense of Functionality</u>

Trade dress is functional if “it is essential to the use or purpose of the [product] or affects the cost or quality of the [product].” *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23, 35, (2001); *see New NGC, Inc. v. Alpinebay, Inc.*, 2019 U.S. Dist. LEXIS 236470, at *6 (N.D. Ill. Sep. 26, 2019) (“Trade dress is functional if it is ‘essential to the use or purpose’ of the product or affects the product’s cost or quality, or if exclusive use of the claimed trade dress would put competitors at a significant non-reputation-related disadvantage.”).

Deckers has sufficiently pled that the Tasman® Trade Dress is non-functional. [1] at ¶¶ 18-19, 25. Specifically, Deckers has alleged that: the Tasman® Trade Dress is non-functional,

[3] Defendant focuses on Deckers’ comment regarding UGG® boots being featured on Oprah’s Favorite Things®. [1] ¶ 7; [42] 12-13. Deckers included this information as background to explain the emergence of Deckers’ business and the UGG® brand generally.

visually distinctive, and unique in the footwear industry; the Tasman® Trade Dress is neither essential to its purpose, nor does it affect the cost or quality of the shoe; there are numerous other alternative designs in the market that are equally feasible and efficient; and the Tasman® Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. [1] at ¶¶ 18-19, 25. Deckers has, therefore, plausibly alleged that the Tasman® Trade Dress is non-functional. *See Deckers*, 2026 U.S. Dist. LEXIS 3680, at *7-8 (finding Deckers adequately alleged the Tasman® Trade Dress' non-functionality where Deckers alleged that "the elements and features forming the overall design and appearance" of the Tasman® Trade Dress "are non-functional because they provide no cost advantages to the manufacturer or utilitarian advantages to the consumer.").

Defendant alleges that "[t]he features Deckers identifies as its trade dress are precisely the functional characteristics that define what a slipper is and make it comfortable, warm, and wearable." [84] at 22. A "slipper" does not require an embroidered braid, a raised seam running longitudinally down the shoe, a rounded dome shaped toe, a suede-like exterior, or a platform outsole in order to function. Accordingly, Defendant's argument fails as to functionality

**V. Defendant's Challenge to Service Fails**

As a preliminary matter, challenges to service are raised through motion under Rule 60(b)(4), not under Rule 60(b)(1). *See Carebourn Capital, LP*, 339 F.R.D. at 512. However, Defendant only moved for relief under Rule 60(b)(1) and 60(b)(3). [84] 7-8. Defendant also specifically asserted and framed improper service as a meritorious defense under Rule 60(b)(1). *Id.* 10. Defendant only mentions Rule 60(b)(4) twice, within the same paragraph, without any further development of the relevant standards. Merely reciting a rule and "then tossing the motion into the court's lap is not enough" to prevent waiver or forfeiture. *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012).

It is neither Deckers' nor the Court's responsibility to construct arguments for Defendant. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). The "obligation to raise the relevant arguments rest[ed] squarely" with Defendant. *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). Defendant's oversized brief did not request relief under Rule 60(b)(4) or frame arguments under relevant legal standards, but instead chose to center baseless "judge shopping" claims. Accordingly, Defendant forfeited any Rule 60(b)(4) arguments. *See Napolitano*, 657 F.3d at 590; *see also Fields v. City of Chi.*, 981 F.3d 534, 564 (7th Cir. 2020); *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020).

In any event, Rule 60(b)(4) "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). "Even gross errors committed by a court in reaching a decision do not render the court's judgment or order void." *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 696 (7th Cir. 1985). Defendant cites *Philos Techs., Inc. v. Philos & D, Inc.* 645 F.3d 851, 855 (7th Cir. 2011) for the proposition that void judgments must be vacated. [84] 11. However, Defendant failed to mention that the Supreme Court recently overruled the line of cases like *Philos* which held that Rule 60(b)(4) motions may be brought at any time. *Burton*, 607 U.S. at 158-62. Accordingly, Defendant must also establish that its Motion was brought in a reasonable time, which it failed to do. *Id.*

Defendant bears the burden of establishing the judgment is void for improper service. *Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 n.2 (7th Cir. 1991); *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986); *Philos*, 645 F.3d at 857. "[A]ny conflicts between the affidavits submitted by [Deckers] and [Defendant] must be resolved in favor of the

[Deckers]." *Carr v. Pouilloux, S.A.*, 947 F. Supp. 393, 395 (C.D. Ill. 1996).

**A. Defendant was Properly Served Under Rule 4(f)(3)**

1. <u>The Hague Convention Does Not Apply</u>

Article 1 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention") states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Hague Convention art. 1. Deckers investigated the purported address listed on Defendant's store, but was unable to locate the address or Defendant at that address. *See* Ex. 2-3, Gaudio Decl. ¶¶ 3-6. Based on this search, Defendant's address was unknown. *See Hallmark Licensing LLC v. The P'ships*, No. 24-cv-00112 (N.D. Ill. Mar. 31, 2025), ECF No. 70 ("Plaintiff offered evidence of its reasonably diligent efforts to ascertain defendant's address—including by using the very search engine ('Baidu') that defendants argue is used in China"); *Piechowicz v. P'ships*, 2024 U.S. Dist. LEXIS 176326, at *3 (S.D.N.Y. Sep. 24, 2024) (searching addresses, including on Chinese search engine, is reasonable diligence).

Defendant did not submit any evidence to show that the address it published to its Amazon store is real, complete, and accurate. Accordingly, Defendant waived the opportunity to do so. *See Multi-Ad Servs. v. NLRB*, 255 F.3d 363, 370 (7th Cir. 2001); *see also Thompson v. AT&T Servs.*, 2018 U.S. Dist. LEXIS 162849, at *21-22 (N.D. Ill. Sep. 24, 2018). Regardless, any conflicts are be resolved in Deckers' favor. *Carr*, 947 F. Supp. at 395; *see also Roadget Bus. PTE. Ltd. v. Individuals*, 2024 U.S. Dist. LEXIS 77461, at *14 (N.D. Ill. Apr. 29, 2024). Defendant also claims it is the same "LITFUN" operating on Walmart that was sued in Case No. 25-cv-15281. [84] 4. However, that LITFUN Walmart store listed a different business name and address on its store. *See* Gaudio Decl. ¶ 7. Deckers' search also determined this address was incomplete. *See* Ex. 4, *id.* ¶ 8. Defendant's Motion does not explain why it listed different information on its Walmart and

Amazon stores. Since, at this stage, all reasonable inferences are made in Deckers' favor, Defendant's address is unknown. *Roadget*, 2024 U.S. Dist. LEXIS 77461, at *14.

In addition, court-ordered service completed by e-mail and electronic publication under Rule 4(f)(3) does not require transmittal of documents abroad. E-mail is electronic data on a network, while a "document" as contemplated by Article 1 of the Hague Convention refers to tangible instruments.[4] The drafters could not have considered the term "document" to include e-mail, since it did not exist yet. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 135 (1989) ("[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions."). Any physical "documents" in this case were electronically published to a website hosted on a U.S.-based server. Since they remained on a U.S.-based server, they were not "transmitted abroad." As a result, "service by e-mail and website posting does not occur 'within the territory of the [PRC].'" *Chanel, Inc. v. Handbagstore*, 2021 U.S. Dist. LEXIS 122842, at *28 (S.D. Fla. June 30, 2021). Thus, the Hague Convention does not apply for these reasons, as well.

2. Rule 4 Does Not Require Service Through the Hague Convention

Even if the Hague Convention applied, Defendant's argument fails because service on Defendant could have been accomplished "in *any* manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4(h) (emphasis added). Under Rule 4(f), Defendant could have been served "by any internationally agreed means of service that is

[4] "As a practical matter, email does not exist in any location at all." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). Moreover, U.S. law does not generally equate electronic records like e-mail to physical documents. *See, e.g., Yates v. United States*, 574 U.S. 528, 550 (2015) ("[W]hat is similar to a 'record' or 'document' but yet is not one? An e-mail[.]") (Alito, J. concurring); Fed. R. Evid. 1001(d) (distinguishing between documents and ESI); Fed. R. Civ. P. 34 (same); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 975 (N.D. Ill. 2021) (describing e-mails as ESI).

reasonably calculated to give notice, such as those authorized by the [Hague Convention]"; by the means listed in Rule 4(f)(2) that were not attempted here; "or by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3).

"The decision whether to allow alternate methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016). Authorizing service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but rather one means amongst several for serving international defendants. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "Thus, despite that [Deckers] had not attempted service under the terms of the Convention, the Court was authorized to order that service be effected by an alternative means ... so long as [Deckers] 'ma[d]e a showing as to why alternative service should be authorized.'" *NBA Props. v. P'ships, et al.*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021)[5]. Defendant does not dispute that Deckers made this showing.

Instead, Defendant argues that Deckers was required to complete service under Rule 4(f)(1). *See* [84] 12 ("through the Central Authority—or through another channel specifically authorized by the Convention and not objected to by China."). "Overlooking Rule 4(f)(3) entirely[,] [t]his argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). Defendant's reliance on *Volkswagenwerk Aktiengesellschaft v. Schlunk*[6] is misplaced, as that case does "not compel a contrary finding."

[5] "[W]hile some courts, in the exercise of their discretion, have looked to whether there has been a showing that the plaintiff has reasonably attempted to effectuate service on the defendant by conventional means and have required a showing that the circumstances render the court's intervention necessary, 'those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement.'" *In re Oneplus Tech. Co.*, 2021 U.S. App. LEXIS 27282, at *10 (Fed. Cir. Sep. 10, 2021).

[6] 486 U.S. 694 (1998). Defendant also incorrectly categorizes *dicta* from *Shlunk*, as its holding. *See Strabala*, 318 F.R.D. at 115 n.36. Moreover, *Shlunk* was also did not involve Rule 4(f)(3), and determined that the Hague Convention is not the exclusive means to complete service on a foreign Defendant.

*NBA Props*, 549 F. Supp. 3d at 798. As most Courts have held, attempting service through the Hague Convention before seeking alternative service is not required. *See id.* at 797; *In re Oneplus Tech. Co.*, 2021 U.S. App. LEXIS 27282, at *9. This is because Rule 4(f) "is not written in a way that suggests an order of preference among [its options], and the majority view ... is that the Rule does not require a party to 'attempt service under the Convention before seeking a court order directing alternative service.'" *Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316, 328 (N.D. Ill. 2024); *see also Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064, at *5 (N.D. Ill. Apr. 1, 2021) ("Hague Convention service is optional under Federal Rule of Civil Procedure 4"). By contrast, other statutes are drafted differently to include a hierarchy. C*ompare* Fed. R. Civ. P. 4(f), *with*, 28 U.S.C. § 1608 and Fed. R. Civ. P. 4(j)(1). *See Republic of Sudan v. Harrison*, 587 U.S. 1, 4 (2019) (describing 28 U.S.C. § 1608's methods as hierarchical).

This reading of the plain language of Rule 4(f) has been endorsed by most other circuit courts. *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 428-29 (1st Cir. 2015); *Enovative Techs., LLC v. Leor,* 622 F. App'x 212, 214 (4th Cir. 2015); *Viahart, L.L.C. v. He Gangpeng*, 2022 U.S. App. LEXIS 3974, at *9 (5th Cir. Feb. 14, 2022); *Rio Props.*, 284 F.3d at 1015; *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020); *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 751 (11th Cir. 2016); *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010). Conversely, the Second Circuit's *Smart Study* decision, which Defendant relies on, read a hierarchy among the methods into Rule 4(f), unsupported by the plain language of Rule 4(f) or by any authority. *Smart Study*, 164 F.4th at 168. This reasoning is contrary to the approach taken in this Circuit, which is to "give the Federal Rules of Civil Procedure their plain meaning." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021). Finally, the Second Circuit in *Smart Study* applied a

highly deferential standard of review to the lower court decision. 164 F.4th at 170. Accordingly, Deckers was not required to attempt service through the Hague Convention under Rule 4(f)(1) prior to seeking permission for email service under Rule 4(f)(3).

3. Electronic Service is Not Prohibited by the Hague Convention

As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *See Rio Props.*, 284 F.3d at 1015. "No other limitations are evident from the text." *Id.*; *cf. Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1495 (2020) ("Nor does this Court usually read into statutes words that aren't there."). Service of process ordered under Rule 4(f)(3) may even be completed in contravention of the foreign country's laws. *See Rio Props.*, 284 F.3d at 1015.

"[T]o prohibit something means to 'forbid,' 'prevent,' or 'effectively stop' it, or 'make [it] impossible.'" *Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685, 697 (2022). "To be 'prohibited' requires ... a clear command that a course of action cannot be taken." *SignalQuest, Inc. v. Tien-Ming Chou & Oncque Corp.*, 284 F.R.D. 45, 48-49 (D.N.H. 2012). Nothing in the text or structure of the Hague Convention prohibits electronic service. *See NBA Props.*, 549 F. Supp. 3d at 797. Defendant has "not directed the Court to any provision of the Convention that limits a party to the methods of service enumerated in the Convention." *Id.* "[I]f the contracting states really wished to bind themselves to the 'limited universe of alternative service methods' available in 1965" they would have done so explicitly. *Peanuts*, 347 F.R.D. at 330. "In the absence of a provision affirmatively prohibiting service by email or any reason to believe the Convention bars all unenumerated methods of service," *NBA Props.*, 549 F. Supp. 3d at 798, "the 'overwhelming majority of courts in this district' [reached] the more straightforward conclusion that the Convention does not prohibit service by email." *Peanuts*, 347 F.R.D. at 330.

*a. Smart Study Rendered Rule 4(f)(3) Superfluous*

This Court should decline to follow *Smart Study*. To determine whether the Hague Service prohibits e-mail service, *Smart Study* concluded that "[t]he relevant question is ... whether the Convention allows for email service on the China-based defendants." 164 F.4th at 170. This was an error because "the relevant inquiry under Rule 4(f)(3) is not whether the [Hague Convention] affirmatively endorses service," but "whether the alternative service method in question is 'prohibited' by the agreement." *Compañía,* 970 F.3d at 1294; *see also* 1 Moore's Federal Practice - Civil § 4.52 (2026) ("the Tenth Circuit correctly adopted this approach to Rule 4(f)(3), holding that the inquiry is not whether the Hague Convention … affirmatively permits service; instead, it is whether the service method is 'prohibited'[.]"). *See Cent. States v. Event Media Inc.*, 135 F.4th 529, 533 (7th Cir. 2025) (finding it an error to conflate "permitted by" with "not prohibited.").

In addition, by concluding that a method of service is prohibited because it was not expressly permitted by the Hague Convention, *Smart Study* made Rule 4(f)(3) superfluous. *Kopec v. City of Elmhurst*, 193 F.3d 894, 902 (7th Cir. 1999) ("we are loathe to adopt constructions that render a statutory provision superfluous"); *see also Dee-K Enters. v. Heveafil SDN. Bhd.*, 174 F.R.D. 376, 380 (E.D. Va. 1997) ("A construction of 'prohibit' that leads to this result should be avoided for it is well-established that courts should be 'reluctant to interpret statutory provisions so as to render superfluous other provisions within the same enactment.'"). Rule 4(f)(1) already authorizes completing service by methods allowed by the Hague Convention. Since Rule 4(f)(1) already authorizes plaintiffs to complete service using the Hague Convention's allowed methods, under *Smart Study*, there would be no need for any plaintiff to request alternative methods not listed by the Hague Convention when it applies.

Rule 4(f)(3) is specifically meant for authorizing "special forms of service" not provided for by the Hague Convention. Fed. R. Civ. P. 4(f)(3), Advisory Committee Note, 1993 Amendments. "In such cases, the court may direct a special method of service not explicitly authorized by international agreement." *Id.* The notes to the 1963 Amendment to Rule 4(i)(E) (former Rule 4(f)(3)) reinforce this and explain that the rule "adds flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a particular case." Fed. R. Civ. P. 4(i)(E), Advisory Committee Note, 1963 Amendments.

Similarly, the Practical Handbook on the Operation of the 1965 Service Convention (2025), explains that "[s]ubstituted service" "refers to the situation where a document is required to be served for the purpose of legal proceedings before a court, and that court directs that the use of some alternative means of bringing the document to the attention of the party to be served will constitute, or be treated as, valid service." Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention (2025) ("Practical Handbook") ¶ 96. "In the United States, this type of service is called 'alternative service[.'] Fed. R. Civ. Pro. 4(f)(3) allows for service 'by other means not prohibited by international agreement, as the court orders.'" *Id.* n.87. Where provided for by a Contracting State's laws, *id.* ¶ 96, the Hague Service Convention does not displace a Court's ability to order "substituted service" when "service may be impracticable or impossible," *id.*, ¶ 95, or when it is otherwise justified. *Id.* ¶ 96.

*b. Smart Study's Interpretation of the Hague Convention was Erroneous*

The Second Circuit in Smart Study concluded that the objective of the Hague Convention was to create certain "appropriate" methods of service, so if a method was not listed, it is not

appropriate. *Smart Study*, 164 F.4th at 170 (citing *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies."). However, the Convention "creates" appropriate means of service "[b]y requiring each state to establish a central authority to assist in the service of process." *Schlunk*, 486 U.S. at 704.

Moreover, the Supreme Court's statement in *Schlunk* that the Hague Convention "pre-empts inconsistent methods of service" was directed at "inconsistent methods of service prescribed by *state* law." *Id.* at 699 (emphasis added). By contrast, "in actions arising under federal law," like this case, the Supreme Court held that "the manner and timing of serving process are ... controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656 (1996). Even Courts following the minority view have acknowledged that "[t]his broad [preemption] pronouncement does not conclusively settle the precise questions here for neither *Schlunk* nor *Water Splash* involved Rule 4(f)(3) or email service." *Luxottica Grp. S.p.A. v. P'ships, et al.*, 2019 U.S. Dist. LEXIS 93466, at *10 (N.D. Ill. June 4, 2019).

*Smart Study*'s observation that "there would be nothing affirmative to object to," 164 F.4th at 170, misunderstood that objections are interpreted narrowly, and contracting parties are encouraged to update their declarations often and specify or qualify their objections. Practical Handbook ¶¶ 397, 409. Likewise, *Smart Study* claimed that if the Hague Convention "permit[s] email service, it is difficult to see why any party 'would ever choose slower, more costly methods' of service laid out in the Convention's text." 164 F.4th at 171. This ignores that the decision of whether to authorize alternative service was under Rule 4(f)(3) is left to the sound discretion of the Court. *Peanuts*, 347 F.R.D. at 324-25.

*Smart Study* also concluded that Articles 11 and 19 of the Hague Convention confirm the listed means of service in the Hague Convention are exclusion. However, Articles 11 and 19 show the opposite. As explained in the Practical Handbook, "[t]he Convention does not preclude the use of other forms of transmission that are not provided for in the Convention, including transmission by electronic means." Practical Handbook ¶ 482. Contracting countries are free to allow additional methods of service by agreement with other countries (Article 11) or by their own internal laws (Article 19). If they did, U.S. litigants would not need to seek relief under Rule 4(f)(3), but could proceed with service under Rule 4(f)(1) or 4(f)(2). "[I]f the contracting states really wished to bind themselves to the 'limited universe of alternative service methods' available in 1965" they would have done so explicitly. *See Peanuts*, 347 F.R.D. at 330.

*c. China has not Objected to E-mail or Electronic Publication*

Defendant argues that e-mail service is prohibited based on China's objection to service by postal channels inside its territories. [42] at 12. This is incorrect. China has declined to indicate that it views postal channels to include e-mail. China, Responses 2022 Questionnaire relating to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ¶ 23.3.[7] Countries' objections to Article 10 are also construed narrowly. *See Compañía*, 970 F.3d at 1294 ("Article 10 objections notwithstanding—that the Convention does not contain a specific prohibition on this form of service."); *see also Hangzhou*, 2021 U.S. Dist. LEXIS 64064, at *9-10 (the Supreme Court has also explained that alternative means of service unmentioned by the Hague Convention are not prohibited if "the receiving state has not objected to [that alternative form of service].").

[7] https://assets.hcch.net/docs/585e8512-8fc9-4fe9-8fe1-b61673d31b8f.pdf.

Courts have routinely recognized that China's objection to service by postal channels under Article 10 of the Hague Convention does not extend to service by e-mail. *NBA Props.*, 549 F. Supp. 3d at 797. This is because postal channels and e-mail are two very different things. Postal channels are a means for delivering physical items like letters and packages through entities such as the U.S. postal service, FedEx, and UPS. E-mail is a means for transmitting digital messages electronically between devices on a network. "Furthermore, unlike postal service, email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention." *Hangzhou*, 2021 U.S. Dist. LEXIS 64064, at *10. E-mail is also a "more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles." *Peanuts*, 347 F.R.D. at 330. In fact, China permits e-mail service on defendants located outside of China, so it is difficult for China to object to U.S. courts ordering the same for defendants located in China. *See Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016, at *9 (N.D. Ill. Nov. 3, 2025); *Hangzhou*, 2021 U.S. Dist. LEXIS 64064, at *11.

Finally, even if China's objection to postal channels included e-mail, the Practical Handbook explained that "[a]n objection to postal channels as a means of service does not extend to a situation where the postal channels are used as a mere supplement to another form of service." Practical Handbook ¶ 393. Defendant does dispute that electronic publication is not prohibited by the Hague Convention. In sum, the overwhelming majority of courts have concluded that the Hauge Convention does not prohibit electronic service of process. The Court should decline to follow the non-binding *Smart Study* decision. Given that electronic service is not prohibited by the Hague Convention, Defendant was properly served under Rule 4(f)(3).

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied.

Dated this 14th day of May 2026.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff*
*Deckers Outdoor Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of May 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically notify all counsel of record.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Luana Faria de Souza
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
lfaria@gbc.law

*Counsel for Plaintiff*
*Deckers Outdoor Corporation*