**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LITFUN,<br><br>Defendant. | No. 25 CV 10080<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deckers Outdoor Corporation manufactures and sells footwear products. Deckers owns a registered trademark for its Tasman style of footwear and alleged that certain e-commerce companies infringed on this trademark. Before the court's decision in *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co.*, 177 F.4th 793 (7th Cir. 2026), I granted plaintiff's motion to serve defendants via electronic means under Federal Rule of Civil Procedure 4(f)(3). Several defendants failed to appear and I granted plaintiff's motion for default judgment. One such defendant, Litfun, now moves to vacate the entry of default judgment against it. Litfun also moves for sanctions and to strike a declaration made by plaintiff's attorney. Among other arguments, Litfun contends that this court lacked personal jurisdiction over it because service of process violated the Hague Convention. For the reasons discussed below, the motion to vacate is granted and the default judgment order is vacated as to defendant Litfun.

## I. Legal Standards

Federal Rule of Civil Procedure 55(c) states that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Under Rule 60(b)(4), relief from a judgment or order is appropriate when "the judgment is void." "When a district court enters a default judgment without personal jurisdiction over the defendant, the judgment is void, and it is a per se abuse of discretion to deny a motion to vacate that judgment." *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010)).

## II. Background

Plaintiff Deckers Outdoor Corporation owns and markets its footwear products under several distinctive trademarked brands, including UGG. [1] ¶ 4.[1] According to Deckers, UGG products are instantly recognizable and the UGG brand has come to symbolize high quality. [1] ¶ 6. For over 20 years, Deckers has sold the UGG Tasman, which features design elements protected under the Tasman Trade Dress. [1] ¶ 8. Tasman is a registered trademark in the United States owned by Deckers. [1] ¶ 8.

Deckers initiated this "Schedule A" litigation in August 2025 against 30 e-commerce companies located in the People's Republic of China (or "other foreign jurisdictions with lax intellectual property enforcement systems"), asserting claims of trade dress infringement and violations of the Illinois Uniform Deceptive Trade

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1].

Practices Act. [1] ¶¶ 9, 16–32. Deckers moved for electronic service of process pursuant to Federal Rule of Civil Procedure 4(f)(3). [10]. I granted the motion and authorized service via email and electronic publication. [16].

Over the next few months, some defendants entered appearances and some were dismissed from the case. In December 2025, Deckers moved for default judgment against 18 defendants, including Litfun. [49]. Finding that these defendants had failed to answer the complaint or otherwise plead, I granted the motion and a final judgment was entered against the defaulting defendants. [54].

Nearly four months later, in April 2026, defendant Litfun filed an appearance and filed its pending motion to vacate the default judgment against it. [82]; [83]. Litfun notes that this "matter fell through the cracks" between its attorneys but nevertheless argues that its actions constitute excusable neglect under Rule 60(b)(1). [84] at 11. In the alternative, Litfun argues that the default judgment is void because this court lacks jurisdiction over it. [84] at 19–22. All claims pending against any defendants that were not subject to the default judgment have been dismissed through stipulations of dismissal. *See* [97]; [72]; [66].

## III. Analysis

### A. Timeliness

All motions under Rule 60(b) must be made within a reasonable time. Fed. R. Civ. P. 60(c). While motions made under Rules 60(b)(1), (2), and (3), must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," that does not mean that motions made within a year under Rule 60(b)(4)

are inherently timely. Fed. R. Civ. P. 60(c); *see Coney Island Auto. Parts Unlimited, Inc. v. Burton Trustee for Vista-Pro Auto., LLC*, 607 U.S. 155, 158–62 (2026). Indeed, while a party "may challenge a default judgment as void for lack of personal jurisdiction at any time," that rule "does not preserve in perpetuity a party's claim regarding personal jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011) (quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007)).

That said, the reasonable-time requirement does not impose a fixed time limit and "in the context of a default judgment, it might be reasonable for a defendant not to seek relief before learning about a plaintiff's attempted enforcement." *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 797 (7th Cir. 2026) (quoting *Coney Island*, 607 U.S. at 160). Here, plaintiff had not attempted to enforce the default judgment before Litfun discovered that its attorneys had not addressed this matter. Litfun filed its motion to vacate a week after its current counsel was retained and less than four months after judgment was entered against it. Whether Litfun's explanation for its default is sufficient to demonstrate "good cause" as required under Rule 60(b)(1) is different from whether its timing was reasonable under Rule 60(c). *See Kagan*, 795 F.2d at 610. Given defendant's unrebutted explanation for its default, I find that its motion to vacate was timely—at least under Rule 60(b)(4), as relevant to resolve the present dispute.

### B. Service of Process

I start by addressing service of process because "no court has the discretion to refuse to vacate [a] judgment once it recognizes its lack of jurisdiction." *Kangol*, 177 F.4th at 798 (quoting *Philos Techs.*, 645 F.3d at 854–55). Litfun argues that the default judgment was void because it was improperly served. [84] at 19–22. Plaintiff contends that Litfun failed to properly raise this Rule 60(b)(4) argument and has therefore forfeited it. [90] at 25–26. Though defendant did not clearly characterize its improper service argument as grounds for relief under the proper rule, the argument is subsumed (and articulated) in Litfun's Rule 60 motion. The argument warrants consideration on the merits.

As in many Schedule A cases, Litfun was served by email pursuant to Federal Rule of Civil Procedure 4(f)(3). *See* [16]. Rule 4(f)(3) authorizes services on a foreign entity by means "not prohibited by international agreement." Litfun contends that because the Hague Convention prohibits service by email in China, service was improper. [84] at 19–20. Plaintiff responds that the Convention does not apply here, and even if it did apply, the Convention does not bar email service. [90] at 27–36.

I start with plaintiff's latter argument: that email service was proper even if the Hague Convention applied. When the parties briefed the issue, several courts in this district permitted service of process by email on Chinese defendants. *See, e.g.*, *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330–31 (N.D. Ill. 2024) (discussing the practices in this district). But earlier this year *Kangol* held that email service into China is prohibited by the

Hague Convention. 177 F.4th at 801. Thus, the dispositive question now is "whether the Convention applies at all." *Id.* at 802.

Article 1 of the Hague Convention states that it "shall apply in cases … where there is occasion to transmit a judicial or extrajudicial document for service abroad" but "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention, Nov. 15, 1965, 20 U.S.T. 361, 362. Deckers argues that the Hague Convention does not apply because Litfun's address was unknown. [90] at 27.

"District courts handling Schedule A cases typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Kangol*, 177 F.4th at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F.Supp.3d 790, 796 (N.D. Ill. 2021)).

According to plaintiff, its efforts to "investigate[] the purported address listed on Defendant's store" are evidence of reasonable diligence. [90] at 27. Through a sworn declaration by its attorney, Deckers explained that it searched for the address and entity associated with Litfun's Amazon account on Google Maps, Baidu Maps, and Bing Maps. [90] at 10. Deckers also searched for the address and entity associated with an earlier lawsuit it brought against a Walmart store using the seller

alias "LITFUN" on the same platforms. [91] ¶¶ 7–8.[2] The searches did not locate either of the addresses "and/or" defendant at these addresses. [90] at 10–11.

Defendant responds that these cursory searches are not evidence of reasonable diligence. [95] at 12. While Litfun concedes that it has not taken steps to register its business or address with Google Maps, Baidu Maps, or Bing, it notes that at least two "well-known," publicly available Chinese databases show the correct address and company name. [93-1] ¶¶ 15–17.

Deckers failed to make reasonably diligent efforts to ascertain and verify Litfun's mailing address before seeking email service. First, no authoritative case holds that being unable to verify a defendant's address on three search engines—despite the address being verifiable on other popular platforms—constitutes reasonable diligence. Deckers cites two non-binding cases that it argues supports its position. [90] at 27. Neither carry the day here. In *Hallmark Licensing LLC v. The Partnerships*, No. 24-cv-00112 (N.D. Ill. Mar. 31, 2025), ECF No. 70, the district court suggested that searching on Baidu was a reasonably diligent effort to locate a defendant. But *Hallmark* was before *Kangol* and the reasonable-diligence inquiry was a side issue because the court had already "expressed [its] agreement with the vast majority of courts that have held that [the Hague Convention] does not prohibit e-mail service on Chinese defendants." *Id.* at 3. Similarly, in *Piechowicz v. The*

[2] Defendant moves to strike the declaration of plaintiff's attorney, Justin Gaudio, that plaintiff attached in support of its opposition motion. [93]. According to defendant, this declaration is misleading and violates the best evidence rule. Because I ultimately grant defendant's motion to vacate, I deny its motion to strike as moot.

*Partnerships*, 2024 WL 4277044 (S.D.N.Y. Sept. 24, 2024), the district court determined that searching for the defendant's address "on multiple search engines" was sufficient to establish reasonable diligence. But *Piechowicz* arose in the context of a preliminary injunction and was before the Second Circuit held in *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025), that email service on Chinese defendants is prohibited by the Hague Convention.

Second, at least some of the screenshots taken from plaintiff's searches depict buildings located at the searched address (as opposed to vacant plots of land). *See* [91-3] at 2 (results show a "Yiwu International Business & Trade Mansion); [91-4] at 2 (similar). Indeed, counsel's declaration stated only that the searches did not locate the searched address "and/or" did not locate defendant at the searched address. [91] ¶¶ 4, 6, 8. Reasonably diligent efforts require more. "A generalized suspicion about an address's validity does not make it 'unknown' under the Hague Service Convention." *Luxottica Grp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F.Supp.3d 816, 823 (N.D. Ill. 2019). Plaintiff's use of "and/or" suggests that some physical addresses were returned in the search results but were not specifically tied to defendant in the search results. If an investigation reveals a physical address, reasonable diligence calls for a next step to determine whether that address could be tied to the defendant through other reasonably available sources. A plaintiff needs to take additional steps to confirm that defendant is not located there, beyond just relying on the information presented on three search engines.

Finally, I note that it is unclear from the record that plaintiff made its alleged efforts *before* resorting to email service. In its motion for electronic service of process pursuant to Rule 4(f)(3), plaintiff did not spell out the efforts it took with respect to each individual defendant to ascertain its physical address. [11]. Instead, plaintiff explained that electronic service was "appropriate and necessary" because store operators that sell counterfeit products typically: (1) provide false or misleading address information, and (2) rely primarily on electronic communications to communicate with third-party service providers and customers. [11] at 1. These bare assertions regarding the reliability of Litfun's "publicly available address are not a substitute for actual diligence." *NBA Props.*, 549 F.Supp.3d at 796. Plaintiff did not contend that it had exercised reasonable diligence before requesting email service.

I granted the motion before the Seventh Circuit decided *Kangol*—at a time when email service into China was still permitted by many judges in this district. Thus, plaintiff was not required to prove reasonable diligence. However, "the question asked by the Hague Convention and Rule 4 is whether the defendant's address was unknown not at the time the defendant raises jurisdiction but at the time the plaintiff moved for substituted service." *Deckers Outdoor Corp. v. A AO*, 2026 WL 1802901, at *5 (N.D. Ill. June 23, 2026).

Attorney Gaudio's declaration suggests that the searches plaintiff conducted occurred before it requested electronic service of process. *See* [91] (statements about the searches appear before statements about electronic publication). Yet at least one of the screenshots depicts a 2026 copyright symbol. [91-4] at 2. Plaintiff moved for

electronic service of process (and default judgment) in 2025, so it is clear that at least this screenshot was not captured until after plaintiff sought substituted service.

Reasonable diligence required more. Before moving for electronic service of process, Deckers needed to take meaningful steps to verify defendant's address. *See Kangol*, 177 F.4th at 799. For example, Deckers could have used more than a search engine (such as more specialized corporate directories or databases) or sent a representative to the reported addresses to confirm that defendant was not operating there.

Plaintiff has not offered sufficient evidence to establish that it made reasonably diligent efforts to ascertain defendant's address. Because I find that the default judgment is void on jurisdictional grounds, I do not reach Litfun's alternative arguments for vacatur.

**C. Sanctions**

In addition to moving to vacate the default judgment against it, defendant also argues that "Deckers engaged in egregious judge shopping" and "should be sanctioned for its vexatious litigation conduct." [84] at 31. In support of its argument, Litfun details the complicated procedural history of this case (and others filed by plaintiff's counsel), accusing plaintiff of filing a complaint against several defendants and then prosecuting the case only "[i]f it likes that judge." [84] at 13. If not, plaintiff "uses the Rule 15 amendment-as-of-right process to 'pinch' the case almost immediately down to just a single defendant" and then refiles an identical case (minus the one defendant) so that it is randomly assigned to a new judge. [84] at 13.

Plaintiff's litigation practice can look like judge shopping, but the conduct also fits a pattern of a repeat litigant adapting to and complying with the variety of practices employed by different judges in this district. As Deckers explained in its Rule 11 letter to defendant, courts in this district have differing views on permissive joinder in e-commerce infringement cases. [86]. For example, in *Bose Corp. v. Schedule A Defs.*, 334 F.R.D. 511 (N.D. Ill. 2020), the court held that "joinder can be based not just on 'transactions,' but also on 'occurrences.'" Other courts have determined that *Bose* "suffers from the absence of a limiting principle" and the "common transaction or occurrence" requirement is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark. *See Bailie v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 734 F.Supp.3d 798, 804 (N.D. Ill. 2024) (citing *Esteé Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020)). Still, other courts have held that claims against independent defendants (where the defendants are not acting in concert) cannot be joined unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. *See Bailie*, 734 F.Supp.3d at 804.

Courts have recognized the hardships presented by these different approaches and determined that it is not improper for a plaintiff to proceed against dismissed defendants in a new case where the original judge concluded that the defendants had been misjoined in the first place. *See, e.g.*, *Tales.com, Inc. v. The P'ships Identified on Schedule A*, No. 25-cv-02970 (N.D. Ill. May 29, 2025), ECF No. 58. I agree with this

understanding at least as far as this case is concerned: Deckers pursued Litfun through multiple complaints to comply with the judges' stated view on joinder.[3] Defendant's request for sanctions is denied.

Though cycling its claim against Litfun across different complaints was not sanctionable, this does not mean that plaintiff should be entitled to drop a defendant from a complaint over and over again without consequence. Under Federal Rule of Civil Procedure 41 "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1).

Litfun cites Rule 41 and argues that plaintiff cannot proceed with the merits of the claims. [84] at 22–25. Litfun argues that because it was "amended out of and thus voluntarily dismissed" from those other cases, each dismissal after the first one amounted to an adjudication on the merits under Rule 41 and the claims are now precluded. [84] at 23.

Deckers responds that a notice of dismissal under Rule 41(a)(1) requires the dismissal of an entire case, not individual claims or parties. [90] at 20 (citing *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015)). There is currently a circuit split on this

[3] Plaintiff's pattern does not suggest a bad-faith intent to avoid particular judges. Plaintiff told the clerk's office that this case was related to 25-cv-09859, an earlier case that it initially brought against many of the same defendants in this case. [2]. The assignment of a judge to each complaint was not in plaintiff's control. If this district's local rules provided for automatic assignment to the same judge for every case derived from or related to an original complaint, plaintiff would be before the same judge yet would still drop defendants and multiply complaints to adhere to that judge's joinder decisions. The pattern that could look like judge shopping could also be the product of a quirk in this district's case-assignment procedures.

issue and the Advisory Committee on Civil Rules has proposed to clarify this rule "by explicitly permitting the dismissal of one or more claims in an action, rather than only the entire action, as the text of the current rule suggests." *Preliminary Draft: Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure, and the Federal Rules of Evidence* 37–38 (2025). But until the Supreme Court and Congress adopt the proposal, the Seventh Circuit's interpretation of Rule 41 is binding in this district.

Dropping a party from a complaint does not dismiss the entire action, and so in this circuit, Rule 41(a) is not the vehicle for dismissal. *See Taylor*, 787 F.3d at 857–58. But plaintiff and plaintiff's counsel regularly invoke Rule 41 as the basis for its voluntary dismissals of a single defendant in a multi-defendant case, calling that a dismissal of the action "as to that defendant," while continuing to pursue the case against others. *See* [21]. Plaintiff invokes *Taylor* and the "entire action" now when it suits plaintiff's ends, but also expects Rule 41(a)(1) to work as automatic partial dismissal at other times. Plaintiff's technique of effectively achieving a dismissal without a Rule 41 notice by filing a new complaint under Rule 15(a) suggests a gap in the rules. The two-dismissal, merits-adjudication principle applies only to Rule 41 dismissals, and Rule 41 requires the filing of a notice. Fed. R. Civ. P. 41(a)(1)(A)(i), (a)(1)(B) ("a notice of dismissal operates as an adjudication on the merits"). Without a notice, defendants cannot rely on Rule 41(a)(1)(B) when targeted in multiple rounds of the same case filed in new complaints. Until the Federal Rules of Civil Procedure close that gap, policing these dismissals falls under the court's inherent authority. "A

federal court's inherent authority is an implied power that emanates from the nature of the institution" and the need to "achieve the orderly and expeditious disposition of cases." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (citation omitted). If a plaintiff repeatedly drops a defendant in bad faith (for example, because the plaintiff doesn't want to litigate the claim in front a specific judge), a sanction of dismissal with prejudice would be an available remedy.

In this case, because I conclude that plaintiff's conduct was not in bad faith, I conclude that the ordinary consequence of a judgment vacated for lack of personal jurisdiction should follow. The judgment against Litfun is vacated. Whether it is too late to try for proper service now is a question for the parties to address in subsequent proceedings.

## IV. Conclusion

Defendant's motion to vacate, [83], is granted. Defendant's motion to strike, [92], is denied. The judgment against defendant Litfun is vacated and Litfun has not been properly served. Plaintiff must file a status report stating whether it intends to pursue proper service against Litfun by September 29, 2026.

ENTER:

Manish S. Shah
United States District Judge

Date: September 14, 2026